METROPOLITAN LIFE INSURANCE COMPANY, Appellant, vs. WISCONSIN LABOR RELATIONS BOARD, Defendant : INTERNATIONAL UNION OF LIFE INSURANCE AGENTS, LOCALS Nos. 1, 2, and 3, Intervenors and Respondents.

*March 11—April 15, 1941.*

For the appellant there was a brief by *R. M. Rieser* of Madison and *Benjamin Poss* of Milwaukee, attorneys, and *Rieser & Mathys* of Madison and *Poss, Toelle & Schuler* of Milwaukee of counsel, and oral argument by *Mr. Rieser, Mr. Poss,* and *Mr. Willard S. Stafford* of Madison.

For the respondents there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

FRITZ, J.    This appeal is from a judgment entered in proceedings instituted in the circuit court by a petition filed by the Metropolitan Life Insurance Company (hereinafter called the "company"), under sec. 111.10 (6), Stats. 1937.    By the petition the company sought the vacation of findings and orders made on March 24, 1939, by the Wisconsin Labor Relations Board (hereinafter called the "board"), by which it ordered the company to cease and desist from refusing to

bargain collectively with the International Union of Life Insurance Agents, Locals Nos. 1, 2, and 3 (hereinafter called the "union"), as the exclusive representative of industrial life insurance agents employed by the company in Milwaukee, Racine, and Kenosha, and to take certain action to effectuate the policies of ch. 111, Stats. 1937; and also ordered the dismissal of allegations charging that the company had spied upon and kept under surveillance the union activities of its agents, and thereby engaged in an unfair labor practice under sec. 111.08 (6), Stats. 1937. In response to the company's petition the board, on April 22, 1939, filed an answer and a counterpetition to have its order enforced. Under a stipulation dated April 12, 1939, the union was permitted to intervene in this proceeding by an order entered by the court on May 13, 1940; and it was also agreed that the board's answer should stand as the union's answer in the proceeding. On May 2, 1939, the union commenced a separate proceeding under sec. 111.10 (6), Stats. 1937, by filing a petition in the circuit court for the modification of the board's order dismissing the allegations in regard to unfair labor practices. On May 4, 1939, the Labor Relations Act, ch. 111, Stats. 1937, was repealed by ch. 57, Laws of 1939, the Employment Peace Act (ch. 111, Stats. 1939), which went into effect on that date. On the subsequent trial in the circuit court, as well as on this appeal, the company contended (1) that the repeal of ch. 111, Stats. 1937, nullified the order of the board rendered thereunder, and that after such repeal the court could not enforce the board's order; and, furthermore, (2) that the board did not have jurisdiction of the relations between the company and the agents in question, that they were not "employees" within the meaning of ch. 111, Stats. 1937, and that the unit adopted by the board was not appropriate and proper for the purposes of collective bargaining. The court concluded that the company's contention that the board's order could not be enforced after the enactment of ch. 57, Laws of 1939, was

not meritorious in view of sec. 370.04, Stats.; and, thereupon, the court ordered that the board's findings and order be confirmed, that the petitions of the company and the union be denied, and that judgment be entered enforcing the board's order. Judgment was entered accordingly on August 15, 1940, and the company appealed.

The title to ch. 57, Laws of 1939, reads as follows:

"An act to repeal section 20.58 and chapter 111, create a new chapter to be designated chapter 111, create a new section to be designated section 20.58," etc.

And sec. 111.17, Stats., as enacted by ch. 57, Laws of 1939, provides that,—

"Wherever the application of the provisions of other statutes or laws conflict with the application of the provisions of this chapter this chapter shall prevail, provided that in any situation where the provisions of this chapter cannot be validly enforced the provisions of such other statutes or laws shall apply."

There is a material difference between ch. 111, Stats. 1937, and ch. 57, Laws of 1939, in relation to the determination of the proper collective-bargaining unit. Sec. 111.09 (2), Stats. 1937, under which the board determined that the union was the proper bargaining unit and ordered the company to bargain with the union, provided that,—

"The board shall decide in each case whether, in order to effectuate the policies of this chapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit or other unit. . . ."

. On the other hand in ch. 57, Laws of 1939, the provision defining the collective-bargaining unit reads,—

"The term 'collective-bargaining unit' shall mean all of the employees of one employer (employed within the state), except that where a majority of such employees engaged in a

single craft, division, department or plant shall have voted by secret ballot as provided in section 111.05 (2) to constitute such group a separate bargaining unit they shall be so considered. . . ."   (Sec. 111.02 (6), Stats. 1939.)

The order made by the board on March 24, 1939, under sec. 111.10, Stats. 1937, was not self-enforcing, and did not have final legal sanction unless confirmed by the judgment of a proper court.  Until so confirmed the board's order did not give any vested right, but was subject to review under sec. 111.10 (5), (6), Stats. 1937, by a circuit court, and could not be enforced until it was sustained by the court.  And even then the board was not empowered under ch. 111, Stats. 1937, to enforce the order by its own direct action.  To secure enforcement upon a failure to obey its order the board had to petition a circuit court for the affirmance and enforcement of its order; and upon the proper filing of the board's petition and record in the court, and the giving of notice thereof to the person charged with the failure, there became applicable the provisions in sec. 111.10 (5), Stats. 1937, that the court "shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and shall make and enter upon the record a judgment enforcing, modifying or setting aside in whole or in part the order of the board."   In view of the similarity between these provisions in subs. (5) and (6) of sec. 111.10, Stats. 1937, and the provisions in respect to such orders and the jurisdiction of the National Labor Relations Board under the federal statute,—the Wagner Act,—there are in point and applicable, by analogy, the conclusions that "The order of the board is subject to review by the designated court, and only when sustained by the court may the order be enforced" (*National Labor Relations Board v. Jones & Laughlin Steel Corp*. 301 U. S. 1, 47, 57 Sup. Ct. 615, 81 L. Ed. 893) ; and that "No power to enforce an order is conferred upon the board.  To

secure enforcement, the board must apply to a circuit court of appeals for its affirmance. And until the board's order has been affirmed by the appropriate circuit court of appeals, no penalty accrues for disobeying it" (*Myers v. Bethlehem Shipbuilding Corp.* 303 U. S. 41, 48, 58 Sup. Ct. 459, 82 L. Ed. 638).

Until an order made by the board under sec. 111.10, Stats. 1937, is reviewed and confirmed by a court under this statute, the only right ensuing by virtue of the order is in the nature of but a procedural right in which no one has a vested interest. So in the case at bar the essentially inchoate attributes of the board's order had not matured into any vested right at the time (May 4, 1939) of the repeal of ch. 111, Stats. 1937, and the abolition of the board created thereby. When the legislative policy and mandate, upon which the board's order was predicated, was changed and a new legislative policy was adopted prior to the existence of any such vested right by virtue of the order, it lost its vitality as effectively as the board created by ch. 111, Stats. 1937, lost its existence for all purposes, and the reviewing court lost such jurisdiction of proceedings in relation to such orders as was conferred by sec. 111.10 (5) and (6), Stats. 1937. Manifestly, upon the repeal of the legislative mandate in sec. 111.09 (2), Stats. 1937, that "the board shall decide in each case" what employee "unit shall be appropriate for the purposes of collective bargaining," and the adoption of the new legislative policy by the enactment of sec. 111.02 (6), Stats. 1939, under which the term "collective-bargaining unit" shall mean all of the employees of an employer except where a majority of such employees shall have voted otherwise by secret ballot, the unconfirmed, inchoate order as to the proper unit for collective bargaining, which, as made by the former board, was in conflict with the legislative policy effective after May 4, 1939, cannot be held to have created a vested right that was to be controlling and enforceable thereafter in the regulation of the employer's future

conduct in collective bargaining. To hold otherwise would disregard the legislative mandate in sec. 111.17, Stats. 1939, *supra.*

The question in this case, as to whether the board's unconfirmed order,—which was based upon a determination as to the proper bargaining unit that was no longer permissible after the change effected by the enactment of sec. 111.02 (6), Stats. 1939, in the legislative mandate governing the manner of determining such unit,—can, after such change, nevertheless be held effective and enforceable in the regulation of the employer's future conduct in such bargaining, is comparable to the question decided in *State ex rel. Central S. H. & P. Co. v. Gettle,* 196 Wis. 1, 220 N. W. 201. In that case the railroad commission had refused to permit the relator, a public utility, to issue its securities because the amount requested was considered too large. On a review by this court of the commission's order it was directed to determine the amount of securities reasonably necessary for relator's purposes and to issue a permit in that amount. After the commission had made that determination and the utility had been notified that the certificate would be issued upon payment of the statutory fee, the statute upon which the proceedings were founded was amended so as to require the commission to determine also whether the proposed financing offered reasonable protection to investors. The court held that, notwithstanding its prior decision and the commission's determination in accordance therewith prior to the amendment of the statute, the certificate could not be issued as the record then stood and that a further hearing was necessary to enable the additional finding to be made as required by the amendment. The court said (p. 4) :

"Furthermore, the railroad commission is a creature of the legislature. It takes its powers from the legislature and not from the court. Its powers are subject to change or repeal by the legislature. If the legislature had abolished the railroad commission by ch. 444 of the Laws of 1927 it is not

likely that any one would contend that the railroad commission continued in existence for the purpose of exercising the power here sought to be enforced. . . . Although the relator was entitled to this certificate at any time prior to the passage of ch. 444 by making payment of the statutory fees required, it could not coerce the issuance of such certificate without the payment of the fees. The right to the certificate had not become vested. It was merely inchoate. When it attempted to perfect its right by the payment of the fees, the law had taken away the authority of the railroad commission to issue the certificate of authority upon the record as it then stood. It would seem that the citation of authority is unnecessary to sustain this conclusion, but the Reports of this court contain ample precedent to that end."

These conclusions are likewise applicable by analogy in the case at bar. The powers of the board under ch. 111, Stats. 1937, were subject to repeal and change by the legislature; and when, prior to the confirmation of the board's order by a court, the legislature not only took away from the board the discretionary power to designate the unit for bargaining purposes, but also entirely abolished the board, and the jurisdiction given by ch. 51, Laws of 1937, to the courts for the enforcement of the board's orders before any right would become vested thereunder, there remained no basis whatever for an adjudication confirming the board's order and ordering the enforcement thereof.

In entering judgment to that effect the court sustained the union's contentions that the requirement that the company bargain collectively constituted a civil liability within the meaning of sec. 370.04, Stats., and that, in view of the saving provision in this statute, the repeal of ch. 111, Stats. 1937, and the abolition of the board created thereby did not defeat the union's right to have the board's order confirmed and enforced. Although sec. 370.04, Stats., was likewise relied upon in the public utility's brief in the *Gettle Case, supra,* there is no reference to the provisions of the statute in the opinion and it evidently was not considered applicable by the

court to such administrative orders. The inchoate right under such an order, which, under the statutory provisions authorizing it, is not final and enforceable until confirmation and enforcement thereof is adjudged by a court, does not result, prior to such adjudication, in "any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof;" and the special proceedings before the board ·and in a court, which are involved herein and were authorized solely by sec. 111.10 (5) and (6), Stats. 1937, are neither "criminal prosecutions" nor "actions at law or in equity." Consequently the inchoate right under the unconfirmed order in question is not within any of those terms as they are used in sec. 370.04, Stats., in stating the matters to which the saving provisions in the statute are to be held applicable. In this connection there is also in point the decision in *State ex rel. Sanderson v. Amundson,* 236 Wis. 523, 295 N. W. 691, that upon the repeal of sec. 40.85, Stats. 1937, an appeal board created thereunder was not continued in effect as to a pending matter by the operation of sec. 370.04, Stats.

It follows that the court should have sustained appellant's contention that by reason of the enactment of ch. 57, Laws of 1939, which became effective May 4, 1939, there could be no further proceedings in court after that date for the confirmation and enforcement of the order made by the former board under ch. 111, Stats. 1937; and as the proceedings should have been dismissed on that ground, there is no occasion to consider the other contentions in relation to the board's order.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the proceedings.