ASOCIACIÓN DE EMPLEADOS DE LA BAYAMÓN TRANSIT COMPANY AND BAYAMÓN TRANSIT COMPANY, substituted by BAYAMÓN TRANSIT COMPANY SUCESORA, Petitioners, *v.* PUERTO RICO LABOR RELATIONS BOARD, ET AL., Respondents.

No. 4. Argued February 2, 1949.—Decided July 15, 1949.

274

*José E. Bosch Roqué* for Asociación de Empleados, petitioner
herein; *Héctor Ramos Mimoso, Juan Enrique Géigel* and
*Guillermo Silva* for petitioner, Bayamón Transit Company.
*Vicente Géigel Polanco, Attorney General (José C. Aponte,
Acting Attorney General,* in the brief), *A. Torres Braschi,
Asst. Attorney General,* and *Carlos J. Faure* for the respond-
ent Board. *C. H. Juliá* for the Unión Local de Chóferes de
Guaynabo.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This case requires us to determine the effect of the Taft-
Hartley Act on the jurisdiction of the insular Labor Rela-
tions Board to prevent unfair labor practices by employers
who operate predominantly local enterprises in Puerto Rico.

Bayamón Transit Company was engaged in the business
of transporting passengers by bus between Bayamón and Río
Piedras. After a complaint was filed and a hearing held,
on May 22, 1947 the insular Board entered an order direct-
ing the company to cease and desist from (*a*) interfering
with their employees in the exercise of their right to organ-
ize, (*b*) refusing to bargain collectively with the Union Local
de Chóferes de Guaynabo as the exclusive representative of
its employees, and (*c*) aiding in the establishment of the
Asociación de Empleados de Bayamón Transit Company.
The company was also ordered affirmatively to bargain col-
lectively with the chauffeur's Union and to withdraw recog-
nition of the Association. On July 15, 1947 the Board

denied a motion for reconsideration. On July 24, 1947 the company filed a petition for review of the order of the Board pursuant to § 9 (2) (b) of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946.[1]

 The first error assigned is that the Board lacked jurisdiction. For our purposes, the effective date of the Taft-Hartley Act was August 22, 1947. When the Board denied the motion for reconsideration on July 15, 1947, the Wagner Act was still in effect. We therefore examine first the problem of whether the insular Board was prohibited from exercising jurisdiction in this case by virtue of the Wagner Act, 29 USC §§ 151 et seq.

Exercising power conferred on it under the commerce clause of the Constitution, Congress provided in § 2 (6) of the Wagner Act that the National Board shall have jurisdiction to prevent unfair labor practices in continental United States only if such practices affect interstate commerce. But Congress has plenary power to legislate for Puerto Rico by virtue of the territorial clause of the Constitution. Consequently, when legislating for Puerto Rico, it is not restricted by the limitations of the commerce clause. Buscaglia v. Ballester, 162 F.(2) 805, cert. denied, 332 U. S. 816. Congress exercised this plenary power over Puerto Rico by providing in § 2 (6) that the Wagner Act applied not only to employers whose operations affected interstate commerce, but also to employers like the petitioner who conduct purely local businesses wholly within Puerto Rico. NLRB v. González Padín Co., 161 F.(2) 353, 355 (C.C.A. 1, 1947); cases collected in 1 CCH Labor Law Reporter, p. 1616.

 While the Wagner Act was in effect, Puerto Rico and some states enacted statutes regulating labor relations. The question then arose as to whether the state and Puerto Rican Boards had concurrent jurisdiction with the National Board to prevent unfair labor practices listed in the Wagner

---

[1] While the case was pending in this Court, we granted a motion of Bayamón Transit Company, Sucesora, to be substituted for the petitioner.

Act which were committed by employers subject to the Federal Act. The general proposition which governs here is easy to state. Local legislation not in conflict with a Federal Act may be enacted covering the same subject-matter as the Federal Act unless (1) there is a specific prohibition in the Federal Act against state action, or (2) the nature of the subject-matter or the Federal legislation raises an inference that it is an exclusive concern of the national government. *California* v. *Zook*, 336 U. S. 735, 93 L. ed. 796; *Puerto Rico* v. *Shell Co.*, 302 U. S. 253; *Chabrán* v. *Bull Insular Line, Inc.*, 69 P.R.R. 250, 269–272, and cases cited. As to (2), the difficulty lies in the application of the general rule to a particular situation.

██ Some state courts took the position that the Wagner Act neither expressly nor by implication prohibited state legislation within the area covered by that Act. They therefore held that their state Boards had concurrent jurisdiction and could proceed under their local Acts to decide cases even when they involved unfair labor practices covered by the Wagner Act and committed by employers subject to the Federal Act, provided the local Act was not in conflict with the Federal Act and the National Board had not assumed jurisdiction in the particular case. *Davega City Radio* v. *State Labor Relations Board*, 22 N. E. (2) 145 (N.Y., 1939); *Wisconsin Labor Relations Board* v. *Fred Rueping L. Co.*, 279 N.W. 673 (Wis., 1938). These cases reached this conclusion although § 10 (a) of the Wagner Act provided that the power of the Board to prevent any unfair labor practice listed in the Act and affecting commerce "shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."

Others contended that the Wagner Act occupied the field and superseded, at least by implication, all state legislation as to the unfair labor practices listed in the Wagner Act and committed by employers subject to the Act. Their theory

was that this rule prevailed even where (1) there was no conflict between the Federal and state Acts and (2) the National Board had not assumed jurisdiction. See footnote 6.

The Supreme Court has held in a series of cases that § 10 (a) of the Wagner Act did not expressly exclude state action. *Bethlehem Co.* v. *State Board*, 330 U. S. 767; *La Crosse Teleph. Corp.* v. *Wisconsin E. Rel. Bd.*, 336 U. S. 18, 93 L. ed. 265; *International Union* v. *Wisconsin Empl. Rel. Bd.*, 336 U. S. 245, 93 L. ed. 510, 515; *Algoma P. & V. Co.* v. *Wisconsin Emp. Rel. Bd.*, 336 U. S. 301, 93 L. ed. 541, 545–46. It said in the *Bethlehem* case at p. 771: "Congress has not seen fit to lay down even the most general of guides to construction of the Act, as it sometimes does, by saying that its regulation either shall or shall not exclude state action." But it pointed out at p. 772: "It long has been the rule that exclusion of state action may be implied from the nature of the legislation and the subject matter although express declaration of such result is wanting." And it predicated its decisions invalidating orders of state Boards in the *Bethlehem* and *La Crosse* cases on the facts (1) that the National Board had assumed jurisdiction in the industries in question, although not in these particular cases, and (2) that the state and Federal statutes provided different standards of regulation for the specific problem before the court.[2]

---

[2] In the *La Crosse* case the Supreme Court considered the effect of both the Wagner and the Taft-Hartley Acts on state statutes. Reaffirming the rule laid down in the *Bethlehem* case, the court pointed out in 93 L. ed. at p. 269 that under both Federal statutes "the National Board had jurisdiction of the industry in which those particular employers were engaged *and had asserted control of their labor relations in general.* Both the state and the federal statutes had laid hold of the same relationship *and had provided different standards for its regulation.* Since the employers in question were subject to regulation by the National Board, we thought the situation too fraught with potential conflict to permit the intrusion of the state agency, even though the National Board had not acted in the particular cases before us." (Italics ours.)

The precise question of whether the Wagner Act by implication excluded state action, even where there was no conflict in the state and Federal Acts and where the National Board had but did not assert jurisdiction, was specifically left open by the *Bethlehem* and *La Crosse* cases. In the former the court said at p. 776: "The National and State Boards have made a comendable effort to avoid conflict in this overlapping state of the statutes. We find nothing in their negotiations, however, which affects either the construction of the federal statute or the question of constitutional power insofar as they are involved in this case, since the National Board made no concession or delegation of power to deal with this subject. The election of the National Board to decline jurisdiction in certain types of cases, for budgetary or other reasons presents a different problem which we do not now decide."

In view of the disclaimer just quoted and the fact that the *Bethlehem* and *La Crosse* cases were specifically grounded on (1) assumption of jurisdiction of the Federal Board and (2) differing standards of regulation in the Federal and state Acts for the specific problem, the Wisconsin Supreme Court upheld the concurrent jurisdiction of its state Board when these two factors were absent. *International Union, etc.* v. *Wisconsin Employ. Rel. Bd.*, 27 N.W.(2) 875, 883 (Wis., 1947).[3] And this position was strengthened in those jurisdictions where as in New York and Puerto Rico the National and state Boards had agreements providing for a

[3] The Supreme Court affirmed the judgment in the *International Union* case in 336 U. S. 245, 93 L. ed. 510. But it did not pass on this point. Instead, it based its decision that the Wisconsin Act applied on the theory that the question involved was not covered by the Federal Act.

In *La Crosse Telephone Corp.* v. *Wisconsin Empl. Rel. Bd.*, 30 N. W. (2) 241 (Wis., 1947), the court, following its *International Union* opinion, reiterated its view that the local Board had concurrent jurisdiction. But here again this question was left open as the Supreme Court reversed in 93 L. ed. 265 on the ground that the Acts were conflicting on the specific problem before it.

division of labor. Ackerman, The Problem of Jurisdiction of National and State Labor Relations Boards, 2 Industrial and Labor Relations Review 360, 364 (April, 1949) ; 12 Fed. Reg. 3443; see footnote 5.

All the factors which led some state Boards to continue to exercise concurrent jurisdiction even after the *Bethlehem* case are present here. By virtue of the provision in § 2 (6) exercising the plenary power of Congress to legislate locally for Puerto Rico, the petitioner, although engaged in a wholly local business, was subject to the Wagner Act. The particular unfair labor practices charged here are covered by both the Federal and insular Acts; but, so far as we are aware, there are no substantial differences in their standards of regulation for these specific practices.[4] The National Board has not assumed jurisdiction in this particular case or in this industry in general. And at the time the insular Board entered its order, an agreement between the National and insular Boards provided for a division of labor under which the instant case fell within the local jurisdiction of the insular Board.[5] We shall therefore assume, without deciding,

---

[4] The additional sanctions contemplated by § 11 of Act No. 130, as amended by Act No. 6, do not constitute a different standard of regulation as such.

[5] In 1945 the insular and National Boards executed an agreement pursuant to § 4(a) of the Wagner Act whereby the former would hear certain types of cases, considered appropriate for disposition by the National Board, as the agent of the latter. 10 Fed. Reg. 10130; First Annual Report of the Insular Board, pp. 11–12. This agreement was modified in 1947 so that fewer cases would be considered appropriate for action by the National Board. Second Annual Report of the Insular Board, pp. 8–9. But under either of these agreements, if a case was handled as a National case, the insular Board acted merely as agent of the Federal Board. Any other entered in such a case would therefore be enforced by the Court of Appeals for the First Circuit, and not by this Court.

On the other hand, both agreements "contemplated that all other cases will be handled under the Puerto Rico Labor Relations Act." The instant case clearly fell within this category. Consequently, as to such cases, these agreements were substantially the same as the agreement between the National and the New York Boards for a division of labor. See Appendix to separate opinion of Mr. Justice Frankfurter in *Bethlehem Co.* v. *State Board, supra,* p. 784, *et seq.*

that while the Wagner Act was in effect the insular Board had jurisdiction to enter the order under review.[6]

■ However, the difficulty is that while the petition of the company for review of the order of the insular Board was pending in this Court, the Taft-Hartley Act, 29 USC Supp. I, §§ 141 *et seq.*, became effective. In the latter § 10 (*a*) of the Wagner Act was amended to answer the question left open in the *Bethlehem* case. It now provides that the power of the National Board to prevent the unfair labor practices listed in the Act "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise; *Provided,* that the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith."

---

[6] While we assume, without deciding, that such concurrent jurisdiction existed under the Wagner Act, we note in passing that after the *Bethlehem* case Pennsylvania and Minnesota courts held the contrary. *Pittsburgh Rys. Co. Substation O. and M. Emp.* Case 54 A.(2) 891 (Pa., 1947); *Linde Air Products Co.* v. *Johnson,* 77 F. Supp. 656 (Minn., 1948); 61 Harv. L. Rev. 840, 842, footnote 19.

Some commentators found overtones of meaning in the *Bethlehem* case excluding all state action in the area covered by the Wagner Act. 42 Ill. L. Rev. 500, 501; Somers, The National Labor Relations Board From Wagner to Taft-Hartley. A Study in Transition and Adaption, IX Federal Bar Journal 315, 339; Teller, Labor Disputes and Collective Bargaining, § 270 pp. 735–6; cf. 61 Harv. L. Rev. 840, 843. Indeed, this apprehension was shared by the separate opinion of Mr. Justice Frankfurter in the *Bethlehem* case, p. 777 *et seq.* And even prior to that case doubt was expressed as to the concurrent jurisdiction of state Boards under the Wagner Act. 51 Harv. L. Rev. 722, 735; 33 Ill. L. Rev. 558, 572. Cf. *Algoma P. & V. Co.* v. *Wisconsin Emp. Rel. Bd., supra.*

This provision has been almost uniformly construed to mean that where an employer is subject to the Taft-Hartley Act, the jurisdiction of the National Board as to unfair labor practices covered by the Federal Act is exclusive, and that a state or Territorial Board may obtain jurisdiction thereof *only if the National Board cedes jurisdiction pursuant to* § 10 (a). *Pittsburgh Rys. Co. Substation O. and M. Emp. Case,* 54 A.(2) 891 (Pa., 1947); *Gerry of California* v. *Superior Court,* 194 P.(2) 689 (Cal., 1948); *United Office and Professional Wkrs.* v. *Smiley,* 77 F. Supp. 659, 668–69 (Pa., 1948); *Food, Tobacco, Agricultural and Allied Wkrs.* v. *Smiley,* 164 F.(2) 922 (CCA 3, 1947); *Linde Air Products Co.* v. *Johnson,* 77 F. Supp. 656 (Minn., 1948); Annotations, 174 A.L.R. 1051; 173 A.L.R. 1401, 1427; 2 CCH Labor Law Reporter, pp. 5930–36, and cases cited; 1947 Annual Survey of American Law, p. 539; Somers, Wagner to Taft-Hartley, IX Federal Bar Journal 315, 339; 42 Ill. L. Rev. 500 *et seq.;* Bouding, Supersedure and the Purgatory Oath Under the Taft-Hartley Law, XXIII N.Y.U.L.Q. 72, 74–76; Boudin, The Supreme Court and Labor: 1946 Term, 47 Col. L. Rev. 979, 993–94; Teller, Labor Disputes and Collective Bargaining, 1948 Supp. §§ 398.24, 398.135–36, pp. 46, 118–19; Ackerman, *supra,* p. 366 *et seq.;* 49 Col.L.Rev. 858 (June, 1949); see *International Brotherhood, etc.* v. *Riley,* 59 A.(2) 476 (N. H., 1948), commented on in 62 Harv. L. Rev. 141. Cf. Smith, The Taft-Hartley Act and State Jurisdiction Over Labor Relations, 46 Mich L. Rev. 593, 602 *et seq.* Consequently, no local Board may now hear such cases without a cession of jurisdiction merely because the National Board has not assumed jurisdiction and the local Act is not in conflict with the Taft-Hartley Act as to the problem under consideration in the particular case.

Indeed, it is difficult to see how the contrary result could be reached. If Congress had meant to leave concurrent jurisdiction in local Boards, it would not have been necessary to provide for cession of jurisdiction. The provision for the

latter must necessarily mean that except when ceded the jurisdiction of the National Board is exclusive.

We think this view has been foreshadowed by the last paragraph of the *La Crosse* opinion in 93 L. ed. at p. 270; the dictum in *California* v. *Zook*, 93 L. ed. at pp. 800–01, that "when state enforcement mechanisms so helpful to federal officials are to be excluded, Congress may say so, as in the Taft-Hartley Act, 29 USCA § 160 (*a*) . . ."; and the language in the *Algoma* case, 93 L. ed. at pp. 548–49, as to the meaning of § 10 (*a*) of the Taft-Hartley Act.

■■ The provision of § 2 (6) of the Wagner Act that the National Board has jurisdiction over local businesses operating wholly within Puerto Rico was not modified by the Taft-Hartley Act. Consequently, by virtue of unamended § 2 (6) and the new version of § 10 (*a*), in the absence of a cession of jurisdiction, under the Taft-Hartley Act the National Board has exclusive jurisdiction in Puerto Rico, even as to cases where there is no conflict between our Act and the Federal Act, over all employers—except government corporations and those engaged in agriculture—who commit unfair labor practices covered by the Federal Act. And this is not affected by the fact that the National Board has not asserted jurisdiction in the specific case under consideration.[7]

■ In view of the foregoing, the insular Board has jurisdiction only where (1) the employer commits an unfair labor practice or engages in some other conduct which is not listed in the Federal Act but is included in the local Act, *Algoma P. & V. Co.* v. *Wisconsin Emp. Rel. Bd., supra; Labor Relations Board* v. *NY & PR SS Co.*, 69 P.R.R. 730; (2) the business of the employer is exempt under the Federal Act but is subject to the insular Act, *i.e.*, agriculture and gov-

---

[7] While it does not concede that it does not have jurisdiction, the Third Annual Report of the Insular Board points out at pp. 5–9 that it is not attempting to apply the local Act in cases covered by the Taft-Hartley Act.

ernment corporations, § 2(2), (11), Act No. 6, Laws of Puerto Rico, 1946, 59 Harv. L. Rev. 976, 982; (3) The National Board cedes jurisdiction to the insular Board pursuant to the conditions laid down in § 10(a) of the Taft-Hartley Act. The instant case does not fit into any of these three categories.[8] Consequently, if the order had been entered in this case after the Taft-Hartley Act was enacted, we would be constrained to decide that the insular Board had no jurisdiction in the premises as exclusive jurisdiction thereof was vested in the National Board.

■ The next problem is whether a different result is required where as here the order of the insular Board was entered a few weeks prior to the effective date of the Taft-Hartley Act and was pending before us on petition for review when the latter Act took effect. In somewhat analogous

---

[8] After the Taft-Hartley Act went into effect, the insular and Federal Boards terminated their agreement, described in footnote 5, effective October 24, 1947. At the same time they issued a "statement of policy" which reads in part as follows (12 Fed. Reg. 7902, reprinted in 1 CCH Labor Law Reporter, pp. 1221–3—22):

"(e) For the present, under the administrative discretion vested in the National Labor Relations Board and General Counsel, it is the opinion of the Board and General Counsel that the full exercise of plenary jurisdiction over all matters concerning representation and labor disputes in the Territory of Puerto Rico, specially those involving enterprises purely local in their operation, is not administratively feasible or desirable. These enterprises are typified by the following examples:

" . . . . . . . . . © . . .

"Municipal bus lines and taxi fleets.

" . . . . . . . . . . .

"(f) It is appropriate therefore for the Puerto Rico Labor Relations Board to proceed on the basis of this statement concerning all cases arising in the enterprises listed above or others of similar character until the assertion of jurisdiction by the National Labor Relations Board or the General Counsel, or until this statement is modified."

This statement was issued after the instant case—involving a municipal bus line—was decided by the insular Board. In addition, according to pp. 8–9 of the Third Annual Report of the Insular Board, this understanding has been terminated. Most important of all, this action was in substance an effort to carry on, at least temporarily, with the division of labor envisaged by the earlier agreements. But it did not amount to a cession of jurisdiction as contemplated by § 10(a) of the Taft-Hartley Act and we can therefore give it no legal effect in this case.

cases the Supreme Court has ruled that orders of the National Board entered under the Wagner Act and pending before the Courts of Appeals for enforcement must be reconsidered by the latter in the light of the Taft-Hartley Act. *NLRB* v. *The Pittsburgh Steamship Co.*, 337 U. S. 656, decided June 20, 1949; *Budd Manufacturing Co.* v. *NLRB*, 332 U. S. 840.

This problem has arisen most frequently in connection with supervisors' unions. Under the Wagner Act employers were required to bargain with supervisors' unions. *Packard Co.* v. *Labor Board*, 330 U. S. 485. Sections 2(3) and 14(*a*) of the Taft-Hartley Act relieve employers of this obligation. In reconsidering orders of the National Board which were entered in such cases under the Wagner Act and were pending review when the Taft-Hartley Act became effective, the Courts of Appeals and the National Board have held that these orders were valid even after the Taft-Hartley Act went into effect insofar as they were reparatory; that is, to the extent that they directed reinstatement and back pay for discriminatory discharge of supervisors for union activity. But the portions of such orders requiring employers to bargain with supervisors' unions are considered as operating *in futuro* and have been set aside on the ground that an employer can no longer be compelled to engage in such bargaining in view of the existing provisions of the Taft-Hartley Act to the contrary. *NLRB* v. *Edward G. Budd Mfg. Co.*, 169 F.(2) 571 (CCA 6, 1948); *NLRB* v. *Wyandotte Transportation Company*, 166 F.(2) 434 (CCA 6, 1948); *NLRB* v. *E. C. Atkins & Co.*, 165 F.(2) 659 (CCA 7, 1947); *Eastern Coal Corp.* v. *NLRB*, 176 F.(2) 131 (C.A. 4, June 13, 1949), 18 L.W. 2009; *L.A. Young Spring & Wire Corp.* v. *NLRB*, 163 F.(2) 905 (DC., 1947); *Eastern Gas & Fuel Associates* v. *NLRB*, 162 F.(2) 864 (CCA 6, 1947); *NLRB* v. *Sandy Hill Iron & Brass Works*, 165 F.(2) 660 (CCA 2, 1947); *In the Matter of Briggs Manufacturing Company*, 75 NLRB 569; *In the Matter of Marshall and Bruce Company*, 75

NLRB 90; *In the Matter of Westinghouse Electric Corporation*, 75 NLRB 1; 2 CCH Labor Law Reporter, p. 6244; 1947 Annual Survey of American Law, pp. 509–12. Cf. *NLRB* v. *Gate City Cotton Mills*, 167 F.(2) 647 (CCA 5, 1948).

We need not determine if the cases which enforced Wagner Act orders as to reinstatement and back pay in supervisor cases even after the effective date of the Taft-Hartley Act would apply here. The order under review contains no such reparatory provisions; it calls exclusively for collective bargaining procedure in the future. And, as we have seen, both the Board and the courts have refused to enforce that type of order, issued under the Wagner Act, if it is no longer required under the supervening provisions of the Taft-Hartley Act.

■ There is an additional and more decisive reason why we cannot enforce the order of the insular Board in this case. In the foregoing Federal cases there was no question of lack of jurisdiction. The National Board and the Courts of Appeals continued to enforce the Taft-Hartley Act just as they had enforced the Wagner Act; the only changes were in the substantive rules they were enforcing. But the change wrought by § 10(a) of the Taft-Hartley Act was more drastic for the insular and state Boards: it definitely deprived them of the concurrent jurisdiction they assumed they had under the Wagner Act.

The decision and order of the Board in this case had not become unappealable prior to the effective date of the Taft-Hartley Act. On the contrary, within the period provided by law, the company petitioned us for review of the order. While the matter was pending in this Court, the Taft-Hartley Act went into effect. Consequently, even assuming as we have that under the Wagner Act the insular Board and this Court had jurisdiction up to that time, Congress ousted both the Board and this Court of such jurisdiction in all pending cases by virtue of § 10(a) of the Taft-Hartley Act.

See *Suárez* v. *Tugwell, Governor*, 67 P.R.R. 166, and cases cited; *Metropolitan Life Ins. Co.* v. *Wisconsin Labor Relations Board*, 297 N. W. 430, (Wis., 1941). Cf. *Puerto Rico Ilustrado* v. *Buscaglia, Treas.*, 64 P.R.R. 870, 907–10. We therefore have no power to enforce the order.[9]

As we have seen, under the Wagner Act the National Board decided not to exercise jurisdiction in some cases for budgetary reasons or because the employer was engaged in a predominantly local enterprise. But the National Board now has both plenary and exclusive jurisdiction in Puerto Rico. And cession of jurisdiction by the National Board to the insular Board under § 10 (a) of the Taft-Hartley Act may be neither possible because of differences in the two Acts nor feasible. See Third Annual Report of the Insular Board, pp. 5–9; Ackerman, *supra*, p. 367. Consequently, in the absence of such a cession of jurisdiction, the labor relations of some of our essentially local enterprises will go unregulated if the National Board continues the policy of refusing jurisdiction in certain cases. But the remedy for that situation, if any be needed, may come only from Congress.[10]

The decision and order of the Insular Board will be set aside and the case remanded with directions to dismiss the complaint for lack of jurisdiction.

Mr. Justice Negrón Fernández did not participate herein.

---

[9] See *Natelson Bros.* v. *New York Board*, 23 L.R.M. 2524 (N.Y., April 1, 1949) for a contrary ruling by a New York inferior court. Cf. Rothenberg on Labor Relations, pp. 306–8.

[10] The following comment is found in 61 Harv. L. Rev. 840, 850: "In the light of recent developments, the future of state labor regulation in industries affecting commerce is dim. If, as seems probable, federal law° is found to occupy the entire field, and widespread delegation is found impracticable, those industries in which the NLRB is unable to exercise its jurisdiction will be left largely unregulated, and co-operation between state and federal boards will be impossible. It is conceivable, although unlikely, that the courts will develop a solution without help from Congress. If they do not, the Taft-Hartley Act should be amended, permitting state controls where an industry would otherwise be entirely unregulated, and removing the restrictions which Section 10 (a) imposes on the NLRB's power to delegate."