SHIRLEY S. ABRAHAMSON, J.
¶ 1. This is an appeal from a judgment and an order of the circuit court for Iowa County, Craig R. Day, Judge. This judgment and order arose in response to the 2013 directions of the court of appeals to the circuit court to enter judgment in favor of Lands' End, Inc., the plaintiff, and against the City of Dodgeville, the *507 defendant, for $724,292.68 "plus statutory interest and other interest or costs to which Lands' End may be entitled."[1]
¶ 2. The issue before this court is what is the correct rate of statutory interest to apply to Lands' End's judgment against the City. More specifically, the issue is whether a party is entitled to interest at the statutory rate of interest in effect when an offer of settlement was made under Wis. Stat. § 807.01(4) (2009-10) or at the statutory rate of interest in effect when the party recovers a judgment under the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14).[2]
¶ 3. We affirm the circuit court's judgment and order. The circuit court awarded Lands' End interest at the statutory rate of interest in effect when Lands' End recovered a judgment, namely at a rate of " 1 percent plus the prime rate" under the amended version of Wis. Stat. § 807.01(4) (2013-14).
¶ 4. Lands' End appealed from the circuit court's order and judgment, arguing that the circuit court's application of the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), was retroactive, disturbed *508 Lands' End's vested rights in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time it made its offer of settlement, and violated Wis. Stat. § 990.04 (2013-14) and the Due Process and Equal Protection clauses of the federal and state constitutions.
¶ 5. For the reasons set forth, we affirm the circuit court's judgment and order awarding Lands' End interest at "1 percent plus the prime rate,"[3] the rate in the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), which was in effect when Lands' End recovered its judgment against the City of Dodge-ville.[4]
¶ 6. Awarding interest at "1 percent plus the prime rate" in the instant case is not a retroactive application of Wis. Stat. § 807.01(4) (2013-14) and Lands' End did not have a vested right in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time Lands' End made its offer of settlement. The circuit court's judgment and order do not violate the Due Process clauses of the federal and state constitutions or Wis. Stat. § 990.04 (2013-14). Moreover, because the legislature had a rational basis *509 for changing the applicable interest rate from 12 percent to " 1 percent plus the prime rate" and did not create an irrational or arbitrary classification, awarding interest under the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), does not violate the Equal Protection clauses of the federal and state Constitutions.
¶ 7. Our decision in the instant case is contrary to the opinion of the court of appeals in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515.[5] In Johnson, the court of appeals held that applying the amended version of the rate of interest to offers of settlement made prior to the effective date of the amended version would disturb a vested right to interest. Johnson is an officially published opinion of the court of appeals. "Officially published opinions of the court of appeals shall have statewide precedential effect." Wis. Stat. § 752.41(2) (2013-14). We overrule the Johnson decision.
¶ 8. Accordingly, we affirm the judgment and order of the circuit court in the instant case.
h-H
¶ 9. The facts and procedural history of the instant case are not in dispute for the purposes of this appeal.
¶ 10. The instant case is one of several cases representing nearly a decade of litigation between *510 Lands' End and the City challenging the City's appraisal of the fair market value (and resulting property tax assessments) of Lands' End's headquarters. We do not recite the entire procedural history of the litigation between Lands' End and the City. Instead, we refer to pertinent aspects of the procedural history.
¶ 11. Lands' End is a Delaware corporation with headquarters in the City of Dodgeville, Wisconsin, occupying six parcels of land. For ease of discussion, we will refer to these six parcels collectively as Lands' End's headquarters.
f 12. Prior to the instant case, in a case concerning the amount of property taxes assessed for 2005 and 2006, the circuit court for Iowa County, Edward Leineweber, Judge, ruled in Lands' End's favor, rejecting the City of Dodgeville's valuation methodology and concluding that the fair market value of Lands' End's headquarters was $25,000,000.
¶ 13. In the instant case, Lands' End challenged the 2008 property tax assessment on its headquarters and sought a refund of taxes. Lands' End argued that the City erroneously based its 2008 property tax assessment on the same valuation methodology rejected in the 2005 and 2006 tax assessment case.
¶ 14. On July 1, 2009, Lands' End made an offer of settlement in the instant case under Wis. Stat. § 807.01(4) (2009-10) for $724,000. The City rejected Lands' End's offer.
f 15. Lands' End subsequently moved for summary judgment, arguing that issue preclusion, together with the undisputed fact that the value of Lands' End's headquarters did not change between 2006 and 2008, entitled it to judgment as a matter of law. On April 19, 2010, the circuit court for Iowa County, William Dyke, Judge, denied Lands' End's *511 motion for summary judgment and affirmed the City's valuation of Lands' End's headquarters.
¶ 16. Lands' End appealed the circuit court's denial of summary judgment. The court of appeals reversed the circuit court, holding that the circuit court erroneously denied Lands' End's motion for summary judgment. The court of appeals remanded the matter to the circuit court "with directions to enter judgment in favor of Lands' End in the amount of $724,292.68, plus statutory interest and any other interest or costs to which Lands' End may be entitled."[6]
¶ 17. On remand, the parties disagreed regarding the applicable rate of statutory interest to which Lands' End was entitled. Lands' End moved for entry of judgment, arguing that it was entitled to interest at the 12 percent rate specified in Wis. Stat. § 807.01(4) (2009-10); this version of § 807.01(4) was in effect when Lands' End made its offer of settlement. In contrast, the City argued that Lands' End was entitled to interest at "1 percent plus the prime rate" as specified in the amended version of Wis. Stat. § 807.01(4) (2013-14); this version of § 807.01(4) was in effect when Lands' End recovered a judgment.
¶ 18. The circuit court agreed with the City, awarding interest at" 1 percent plus the prime rate" as specified in the amended version of Wis. Stat. § 807.01(4) (2013-14). The circuit court concluded that "1 percent plus the prime rate" was, at the relevant time, 4.25 percent, a rate substantially less than the 12 percent interest provided for in Wis. Stat. § 807.01(4) *512 (2009-10). Lands' End appealed. We granted the City's petition to bypass the court of appeals. See Wis. Stat. § (Rule) 809.60.
I — I 1 — 1
¶ 19. The instant case involves the interpretation of statutes and constitutional provisions and their application to undisputed facts. These are questions of law that we decide independently of the circuit court and the court of appeals while benefitting from their analyses. Milwaukee Journal Sentinel v. Wis. Dep't of Admin., 2009 WI 79, ¶ 14, 319 Wis. 2d 439, 768 N.W.2d 700.
¶ 20. Lands' End challenges the constitutionality of Wis. Stat. § 807.01(4) (2013-14) as applied to it. Lands' End has the burden of proving beyond a reasonable doubt that Wis. Stat. § 807.01(4) is unconstitutional as applied to it. See Soc'y Ins. v. LIRC, 2010 WI 68, ¶ 27, 326 Wis. 2d 444, 786 N.W.2d 385.
I — I I — i l-H
¶ 21. We first examine the texts of the statutes governing offers of settlement and the rate of interest to which a party is entitled if the party making the offer of settlement subsequently recovers a judgment for greater than or equal to the amount of the offer. We then turn to the court of appeals' decision in Johnson before addressing Lands' End's five legal arguments in support of its position.
¶ 22. Wisconsin Stat. § 807.01, entitled "Settlement offers," provides that if a party makes an offer of settlement and subsequently recovers a judgment for *513 greater than or equal to the amount of its offer, the offeror is "entitled" to interest on the amount recovered running from the date of its offer. See Wis. Stat. §807.01(4) (2009-10) and Wis. Stat. §807.01(4) (2013-14) for two versions of this statute.
¶ 23. The two versions of the statutes set forth two different rates of statutory interest. The dispute is about which version of the statute (and thus which rate of statutory interest) applies in the instant case.
¶ 24. Prior to 2011, Wis. Stat. §807.01(4) (2009-10) provided that the party making an offer of settlement may be entitled to interest at the annual rate of 12 percent on the amount recovered from the date of the offer of settlement until the amount is paid.
¶ 25. Section 807.01(4) (2009-10) stated in relevant part as follows (with emphasis added):
If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. . . .
¶ 26. In 2011 the legislature adopted 2011 Wis. Act 69, amending the statute. Act 69 amended Wis. Stat. § 807.01(4) (2009-10) to provide that the party making an offer of settlement is entitled to interest at an annual rate equal to 1 percent plus the applicable prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year, or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year.
*514 ¶ 27. Section 807.01(4) (2013-14) states in relevant part as follows (with emphasis added):
If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at an annual rate equal to 1 percent plus the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year, as reported by the federal reserve board in federal reserve statistical release H. 15, on the amount recovered from the date of the offer of settlement until the amount is paid....
¶ 28. Both versions of Wis. Stat. § 807.01(4) impose the same three basic requirements in order for a party who makes an offer of settlement to be entitled to interest on a judgment recovered: (1) an (unaccepted) offer of settlement; (2) recovery of a judgment; and (3) a judgment for greater than or equal to the amount of the offer. "[I]nterest may not be imposed unless an actual judgement is entered in a case." DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶ 33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶ 8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) (declining to award interest when no judgment was recovered)); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶ 10, 266 Wis. 2d 491, 668 N.W.2d 794 (awarding interest because a judgment was recovered based on a stipulation).
¶ 29. In the instant case, it is undisputed that Lands' End meets these three requirements and is *515 therefore entitled to interest on its judgment. The question remains, however, what statutory rate of interest applies in the instant case.
¶ 30. To support its position that the applicable rate of interest is set forth in the earlier version of Wis. Stat. § 807.01(4) (2009-10), Lands End relies on the court of appeals' decision in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515.
¶ 31. Johnson decided the same issue that is presented in the instant case. The Johnson decision did not, however, address all the legal arguments presented in the instant case.
¶ 32. In Johnson, the plaintiff, Johnson, made an offer of settlement in 2008.[7] After the offer of settlement was made but before Johnson recovered a judgment, the legislature enacted 2011 Wis. Act 69.[8] In 2013, after 2011 Wis. Act 69 took effect, Johnson recovered more than the amount of his offer of settlement.[9] Johnson sought interest on the judgment from the time the offer of settlement at 12 percent annually from the date of the offer of settlement pursuant to Wis. Stat. § 807.01(4) (2007-08).[10]
¶ 33. The circuit court in Johnson applied the interest rate in effect when Johnson recovered his judgment — "1 percent plus the prime rate" — rather than the 12 percent rate in effect at the time of Johnson's offer of settlement.[11]
¶ 34. The court of appeals reversed the circuit court in Johnson, reasoning that awarding interest at *516 " 1 percent plus the prime rate" when a party made an offer of settlement under the prior 12 percent interest rate would be unconstitutional.[12] The court of appeals concluded that the interest rate to be applied is the rate in effect on the date of the offer of settlement.[13] The court of appeals stated that applying a statutory interest rate enacted after the offer of settlement adversely affects the expectations of both parties and "would substantially impair Johnson's vested right to interest on the judgment at twelve percent."[14]
¶ 35. For the reasons set forth, we disagree with the court of appeals' decision in Johnson and are not persuaded by Lands' End's legal arguments.
¶ 36. Lands' End's arguments are as follows:
(1) Applying the amended version of Wis. Stat. § 807.01(4) (2013-14), which fixes the statutory rate of interest at "1 percent plus the prime rate," to Lands' End's judgment in the instant case is a retroactive application of the statute;
*517 (2) Lands' End had a vested right in the 12 percent statutory interest rate in the version of Wis. Stat. § 807.01(4) (2009-10) in effect when Lands' End made its offer of settlement;
(3) Applying Wis. Stat. §807.01(4) (2013-14), which provides for interest at" 1 percent plus the prime rate," to Lands' End's judgment in the instant case violates the Due Process clauses of the federal and state constitutions;
(4) Applying Wis. Stat. § 807.01(4) (2013-14), which provides for interest at " 1 percent plus the prime rate," to Lands' End's judgment in the instant case violates Wis. Stat. § 990.04; and
(5) Applying Wis. Stat. §807.01(4) (2013-14), which provides for interest at" 1 percent plus the prime rate," to Lands' End's judgment in the instant case violates the Equal Protection clauses of the federal and state constitutions.
¶ 37. Although we address each of these legal arguments separately, they are interrelated, not isolated. Lands' End relies on the same or similar approaches in each argument to buttress its position.
(1)
¶ 38. Applying the "1 percent plus the prime rate" language in effect when Lands' End recovered its judgment was not a retroactive application of the amended version of Wis. Stat. § 807.01(4) (2013-14) to Lands' End's judgment, because Lands' End had not recovered a judgment before the amended version of the statute took effect.
*518 ¶ 39. Deciding when a statute applies retroactively is not always easy; it is not a mechanical task. "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).
f 40. To put into perspective the issue of whether the amended version of Wis. Stat. § 807.01(4) (2013-14) is retroactive legislation, we state and apply principles of the law of retroactivity.
¶ 41. First, the party challenging legislation as unconstitutionally retroactive "has the burden of proving the statute, as applied to it, is unconstitutional beyond a reasonable doubt." Soc'y Ins. v. LIRC, 2010 WI 68, ¶ 27, 326 Wis. 2d 444, 786 N.W.2d 385. The burden is thus on Lands' End in the instant case.
f 42. Second, " [t]he general rule in Wisconsin is that legislation is presumptively prospective unless the statutory language clearly reveals either expressly or by necessary implication an intent that the statute apply retroactively." Betthauser v. Med. Protective Co., 172 Wis. 2d 141, 147, 493 N.W.2d 40 (1992) (quoting U.S. Fire Ins. Co. v. E.D. Wesley Co., 105 Wis. 2d 305, 319, 313 N.W.2d 833 (1982)).[15]
*519 ¶ 43. The amended version of Wis. Stat. § 807.01(4) (2013-14) does not clearly reveal a legislative intent that the statute apply retroactively. See 2011 Wis. Act 69 (adopting Wis. Stat. § 807.01(4) (2013-14)).
¶ 44. In contrast, when the 12 percent rate in Wis. Stat. § 807.01(4) (2009-10) first became effective in 1980, the legislature clearly specified that the statute did not apply retroactively: "The treatment or creation of sections 807.01(4)... of the statutes apply only to actions commenced on or after the effective date of this Act." § 5, ch. 271, Laws of 1979.
¶ 45. When the legislature adopted 2011 Wis. Act 69 reducing the rate of interest to " 1 percent plus the prime rate," the legislature did not use similar limiting language. Rather, the legislature stated that 2011 Wis. Act 69 "first applies to an execution on a judgment entered on the effective date of this subsection." 2011 Wis. Act 69, § 4. The parties do not dispute that Lands' End did not "execut[e] on judgment" prior to the effective date of 2011 Wis. Act 69.
¶ 46. We conclude that the amended version of Wis. Stat. § 807.01(4) (2013-14) does not clearly reveal a legislative intent that the statute apply retroactively. Further analysis is required to determine whether Wis. Stat. § 807.01(4) (2013-14) applies retroactively in the instant case.
*520 f 47. Third, another principle guiding the determination of retroactivity in the present case is that a statute does not operate retroactively simply because it is applied "in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law." State v. Chrysler Outboard Corp., 219 Wis. 2d 130, 172, 580 N.W.2d 203 (1998) (quoting Landgraf, 511 U.S. at 269-70).[16]
¶ 48. Thus the fact that the amended version of Wis. Stat. §807.01(4) (2013-14) applies to Lands' End's pending instant case, standing alone, does not render the statute retroactive.
¶ 49. Fourth, a statute operates retroactively if, among other things, it "takes away or impairs vested rights . . . ." Chrysler Outboard, 219 Wis. 2d at 172 (quoting In re Estate of Bilsie, 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981)). But "[t]he mere expectation of a future benefit or contingent interest does not create a vested right." 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory *521 Construction § 41:6, at 456-57 (7th ed. 2009) (emphasis added).[17]
¶ 50. Thus, when the existence of a right is contingent on an uncertain future event (here, recovering a judgment), and that event has not occurred prior to the enactment of a statute altering the legal effect of that uncertain future event, the party challenging the application of the revised statute has no vested right in the application of the prior law, and the new law is not being retroactively applied.
¶ 51. The explanation of this point in Winiarski v. Miicke, 186 Wis. 2d 409, 521 N.W.2d 162 (Ct. App. 1994), is instructive.
¶ 52. In Winiarski, a child was adopted by his grandparents.[18] At the time of the adoption, an adopted child could inherit from his or her birth parent through intestate succession.[19] After the adoption but before the child's biological father died, a new statute *522 was enacted declaring (with exceptions not relevant here) that an adopted child could not inherit from his or her birth parent through intestate succession.[20] Subsequently, the child's biological father died intestate, and the child sought to take from his biological father's estate, arguing that the new statute was prospective only and did not apply to his situation.[21]
¶ 53. The court of appeals held in Winiarski against the child as follows:
[T]he right to take by intestate succession does not exist until the decedent dies intestate. Thus, intestate succession is governed by statutes 'in force at the time of the death of the intestate.' Accordingly, a statute enacted after an adoption that alters the effect of the adoption on the right to inherit from a[n] intestate decedent is prospective, not retroactive, as long as the statute was effective before the intestate's death.[22]
¶ 54. In the instant case, like Winiarski, Lands' End's right at the time the amended version of the statute took effect was contingent on an uncertain future event, namely Lands' End's recovery of a judgment for greater than or equal to the amount of its offer of settlement. Thus, as in Winiarski, the amended version of the statute is not retroactive, because Lands' End's right under the amended version of the statute at the effective date of the statute was inchoate, not perfected, not ripened, nor accrued. Lands' End had not yet recovered a judgment.
¶ 55. Fifth, although not dispositive, the presumption against retroactive application of a statute is *523 premised on considerations of fairness.[23] Persons should have an opportunity to know in advance what the law is and to conform their conduct accordingly.[24] Furthermore, settled expectations should not be lightly disrupted.[25]
¶ 56. Although Lands' End argues that it had a settled expectation of 12 percent interest based on its offer of judgment, which antedated the enactment of Wis. Stat. § 807.01(4) (2013-14), that expectation does not necessarily render Wis. Stat. § 807.01(4) (2013-14) retroactive or make its application to Lands' End in the instant case unfair. "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." Lon L. Fuller, The Morality of Law 60 (1964).
*524 ¶ 57. Moreover, it is questionable whether an expectation based on the prior law was reasonable. To obtain interest at the former 12 percent statutory interest rate, Lands' End had to recover a judgment for as much or more than the amount of its offer of settlement. The statute and the case law explicitly say so.[26] Lands' End had not recovered a judgment when the former 12 percent statutory interest rate was repealed, and the possibility remained that it would not recover a judgment at all or would recover a judgment for less than the offer of settlement. Thus, Lands' End's claim that it expected to be governed by the former statute rests on shaky ground.
¶ 58. Furthermore, it is not an unreasonable burden on Lands' End or unjust or impractical to apply the amended version of the statutory rate of interest to Lands' End's judgment in the instant case. When the 12 percent interest rate became effective in 1980, 12 percent was lower than the predominant market interest rate.[27] In 2009, however, when Lands' End made its offer of settlement, market interest rates were 3.25 percent — considerably lower than when the 12 percent *525 statutory interest rate in Wis. Stat. § 807.01(4) (2009-10) went into effect in 1980.
¶ 59. The interest rate in Wis. Stat. § 807.01(4) is apparently designed to place parties in roughly the same position they would have been had the amount of the judgment recovered been paid immediately.[28] When we consider the market interest rate during the entire period of the instant case, the interest rate in the amended version of the statute compensated Lands' End for approximately the same amount had the amount of the judgment recovered been paid immediately.
¶ 60. By tying the interest rate in Wis. Stat. § 807.01(4) (2013-14) to market rates, the legislature ensured that a party like Lands' End that recovers a judgment for as much or more than the amount of an offer of settlement after the effective date of the statute is fairly and reasonably compensated for being unable, during the pendency of the litigation, to use the money to which it is entitled.
¶ 61. Elsewhere, Lands' End argues that it would be unfair to award it interest at" 1 percent plus the prime rate" because, but for the circuit court's erroneous denial of summary judgment, Lands' End would have recovered a judgment prior to the effective date of 2011 Wis. Act 69, and thus would have been entitled to interest at 12 percent rather than "1 percent plus the prime rate."
*526 ¶ 62. We disagree with Lands' End when it argues that it is unfair to award interest at the lower interest rate when its failure to recover a judgment before the amended statute was enacted is due to the circuit court's error.
¶ 63. Although in the instant case there is arguably an identifiable point when Lands' End should have recovered its judgment (April 19, 2010, the date the circuit court denied summary judgment), other cases may present more complicated factual situations in which it would be difficult, if not impossible, to identify the point at which an offeror of settlement "should" have recovered a judgment. Moreover, the text of Wis. Stat. § 807.01(4) ties the applicable interest rate to'the "recover[y of] a judgment," not when a judgment "should have been" recovered.
¶ 64. In sum, applying the amended version of the statutory rate of interest to Lands' End's judgment in the instant case is not retroactive, unfair, unreasonable, or unduly burdensome to Lands' End. Rather, the amended version of the statute fosters legitimate legislative purposes.[29]
¶ 65. Sixth, Lands' End argues that the amended version of Wis. Stat. § 807.01(4) (2013-14) applies retroactively because it "t[ook] away or impair [ed] vested rights" Lands' End acquired under Wis. Stat. § 807.01(4) (2009-10) when it made its offer of settlement.[30]
*527 ¶ 66. We turn now to a discussion of the concept of a "vested right," a concept related to retroactivity and to Lands' End's other arguments.
(2)
¶ 67. Lands' End did not have a vested right in the 12 percent rate of interest in effect when it made its offer of settlement.
¶ 68. Defining a "vested right" is somewhat difficult, and some definitions are opaque, circular, and conclusory. One such definition of a vested right is that a vested right is a presently legally enforceable right, not dependent on uncertain future events. Statutes and Statutory Construction (also known as Sutherland Statutory Construction), for example, describes several definitions of "vested right," including "an immediate right of present enjoyment or a present fixed right of future enjoyment." 2 Norman J. Singer & J.D. Sham-bie Singer, Statutes and Statutory Construction § 41:6, at 456 (7th ed. 2009) (footnote omitted).
¶ 69. Our case law describes vested rights similarly: " [t]he concept of vested rights is conclusory — a right is vested when it has been so far perfected that it cannot be taken away by statute." Soc'y Ins. v. LIRC, 2010 WI 68, ¶ 29, 326 Wis. 2d 444, 786 N.W.2d 385 *528 (quoting Neiman v. Am. Nat'l Prop. & Cas. Co., 2000 WI 83, ¶ 14, 236 Wis. 2d 411, 613 N.W.2d 160); see also In re Paternity of John R.B., 2005 WI 6, ¶ 20, 277 Wis. 2d 378, 690 N.W.2d 849; Black's Law Dictionary 1520 (10th ed. 2014) (defining "vested right" as, among other things, "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.").
¶ 70. A similar definition of a "vested right" has been formulated by the court in another context. The court has stated that "[a]n existing right of action which has accrued under the rules of the common law or in accordance with its principles is a vested property right." Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶ 22, 244 Wis. 2d 720, 628 N.W.2d 842 (quoting Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau, 97 Wis. 2d 435, 445, 293 N.W.2d 515 (1980)).
¶ 71. Lands' End argues in effect that it has a vested right to the 12 percent statutory rate of interest in Wis. Stat. § 807.01(4) because its remedy under § 807.01(4) (2009-10) was "perfected" or "accrued" before Wis. Stat. § 807.01(4) (2013-14) took effect and is, therefore, a vested property right.
f 72. We disagree with Lands' End. Under both versions of Wis. Stat. § 807.01(4), Lands' End did not acquire a legally enforceable right to recover interest until it recovered a judgment.[31] Unlike, for example, a *529 right of action for negligence, which accrues (and is legally enforceable) on the date of the accident and injury, see Matthies, 244 Wis. 2d at 738-39, Lands' End's right to recover interest under Wis. Stat. § 807.01(4) accrues (and becomes legally enforceable) only after the recovery of a judgment. Changing the interest rate in Wis. Stat. § 807.01(4) simply alters the legal consequence of events not yet completed. Before Lands' End recovered a judgment, its right to interest was inchoate.
¶ 73. The principle that vesting of a right does not occur until the right is no longer contingent is illustrated in Trinity Petroleum, Inc. v. Scott Oil Co., Inc., 2007 WI 88, 302 Wis. 2d 299, 735 N.W.2d 1.
¶ 74. In Trinity, we addressed, among other things, whether a party defending against an allegedly frivolous claim prior to the repeal of Wis. Stat. § 814.025 (2003-04), which authorized the recovery of costs and reasonable attorneys fees incurred in defending against a frivolous claim brought before the repeal of § 814.025, had a "vested right."[32]
¶ 75. The Trinity court concluded that" [t]he legislature did not create a substantive, vested right to costs and reasonable attorneys fees in former Wis. Stat. § 814.025 (2003 — 04)."[33] Rather, the court explained that " [o]nly upon a finding by a circuit court that an action was frivolous under § 814.025 (when that statute was still in effect) would an aggrieved party obtain a vested right to recover reasonable expenses under the statute."[34] Because the circuit court "made no such finding in [Trinity] before the *530 repeal of § 814.025," the aggrieved party had no vested right under the repealed statute.[35]
¶ 76. As with the finding of frivolousness in Trinity, a party has no right to recover interest from the date of an offer of settlement under either version of Wis. Stat. § 807.01(4) unless the party recovers a judgment for as much or more than the amount of the offer.
¶ 77. In the instant case, Lands' End did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect. Lands' End thus stands in a position similar to that of the defendant in Trinity. Lands' End's entitlement to interest under Wis. Stat. § 807.01(4) (2009-10) was contingent on a subsequent determination by a court, namely that Lands' End was entitled to a judgment for greater than or equal to the amount of its offer of settlement.
¶ 78. Also like the defendant in Trinity, Lands' End did not obtain such a determination while Wis. Stat. § 807.01(4) (2009-10) was in effect. Under these circumstances, Lands' End did not have a vested right *531 to recover interest under Wis. Stat. § 807.01(4) (2009-10). See 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:6, at 456-57 (7th ed. 2009) ("The mere expectation of a future benefit or contingent interest does not create a vested right.").
¶ 79. Accordingly, applying the "1 percent plus the prime rate" in the amended version of Wis. Stat. § 807.01(4) did not "takeD away or impairf] vested rights acquired [by Lands' End] under existing laws . . . ."[36]
(3)
¶ 80. Lands' End's claim under the Due Process clauses of the federal and state constitutions fails.
¶ 81. Lands' End's Due Process claim rests on Wis. Stat. § 807.01(4) (2013-14) having "a retroactive effect," and Lands' End's having "a vested right" under Wis. Stat. § 807.01(4) (2009-10). See Soc'y Ins., 326 Wis. 2d 444, ¶ 29.
¶ 82. As we explained previously, awarding interest to Lands' End under Wis. Stat. § 807.01(4) (2013-14) does not have a retroactive effect. Furthermore, Lands' End did not acquire a vested right to the statutory interest rate in Wis. Stat. § 807.01(4) (2009-10) while Wis. Stat. § 807.01(4) (2009-10) was in effect because Lands' End did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect. Accordingly, awarding interest to Lands' End at "1 percent plus the prime rate" under Wis. Stat. *532 § 807.01(4) (2013-14) does not take away or impair any vested rights.[37] We therefore conclude that applying the amended statute to Lands' End in the instant case does not violate due process.
(4)
¶ 83. Awarding interest to Lands' End under the amended version of Wis. Stat. § 807.01(4) (2013-14) does not violate Wis. Stat. § 990.04 (2013-14).
¶ 84. Wisconsin Stat. § 990.04 (2013-14), entitled "Actions pending not defeated by repeal of statute," provides (with emphasis added):
The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute. And criminal prosecutions *533 and actions at law or in equity founded upon such repealed statute, whether instituted before or after the repeal thereof, shall not be defeated or impaired by such repeal but shall, notwithstanding such repeal, proceed to judgment in the same manner and to the like purpose and effect as if the repealed statute continued in full force to the time of final judgment thereon, unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute.
¶ 85. Before we discuss Lands' End's arguments regarding Wis. Stat. § 990.04 (2013-14) we observe that the arguments are largely undeveloped. "We do not usually address undeveloped arguments."[38] Nevertheless, Lands' End cited several cases interpreting and applying Wis. Stat. § 990.04 (2013-14). These cases do not support Lands' End's position.
¶ 86. Specifically, Lands' End relies upon the interpretation of Wis. Stat. § 990.04 in Jackson County Iron Co. v. Musolf, 134 Wis. 2d 95, 104, 396 N.W.2d 323 (1986). The Jackson County court stated: " [I]t is the clear intention of sec. 990.04 to preserve all rights which may have arisen before the repeal of a statute unless such rights are 'specially and expressly remitted, abrogated or done away with by the repealing statute.' " 134 Wis. 2d at 104 (emphasis added) (quoting Niesen v. State, 30 Wis. 2d 490, 493-94, 141 N.W.2d 194 (1966)).
¶ 87. Jackson County cites Bratton v. Town of Johnson, 76 Wis. 430, 434, 45 N.W. 412 (1890). Bratton *534 discussed the effect of the repeal of statutory remedies, stating, "The repeal of statutes that simply affect the remedy does not defeat or impair any civil liability incurred, or rights of action accrued, under them,. . . unless specially and expressly remitted, abrogated, or done away with by such repealing statute." Bratton, 76 Wis. at 434.
¶ 88. Lands' End's right to interest did not arise until Lands' End recovered a judgment; this event occurred when Lands' End recovered a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect. As a result, Lands' End's reliance on Wis. Stat. § 990.04 (2013-14) is misplaced.
¶ 89. This conclusion is reinforced by the court's discussions of the predecessor of Wis. Stat. § 990.04 (2013-14), Wis. Stat. § 370.04 (1953-54), in Waddell v. Mamat, 271 Wis. 176, 181, 72 N.W.2d 763 (1955), and Metropolitan Life Insurance Co. v. Wisconsin Labor Relations Board, 237 Wis. 464, 297 N.W. 430 (1941).
¶ 90. Both Waddell and Metropolitan Life distinguished between accrued, legally enforceable rights and rights contingent on future events, observing that such contingent rights "could ripen into a right preserved by sec. 370.04 only upon the happening of a further event. . . ." See Waddell, 271 Wis. at 181 (citing Metro. Life Ins. Co. v. Wis. Labor Relations Bd., 237 Wis. 464, 297 N.W. 430 (1941)). Under Waddell and Metropolitan Life, an unperfected or "inchoate" right, dependent on future events, is not protected by Wis. Stat. § 990.04. See Waddell, 271 Wis. at 181; Metropolitan Life, 237 Wis. at 472.
¶ 91. Lands' End argues in effect that it has "perfected" or "accrued" a right to the 12 percent statutory rate of interest in Wis. Stat. § 807.01(4) (2009-10) because its remedy under § 807.01(4) *535 (2009-10) was perfected or accrued before Wis. Stat. § 807.01(4) (2013-14) took effect.
¶ 92. As we have previously explained, however, Lands' End did not have a perfected or accrued (or "vested" or "ripened") right to the 12 percent interest rate before Wis. Stat. § 807.01(4) (2013-14) took effect. Lands' End's right to recover interest under Wis. Stat. § 807.01(4) (2009-10) was inchoate; it was contingent on Lands' End's first obtaining a judgment for as much or more than the amount of its offer of settlement.
¶ 93. Wisconsin Stat. § 990.04 (2013-14) is thus not implicated in the instant case.
(5)
¶ 94. Finally, Lands' End argues that if Wis. Stat. § 807.01(4) (2013-14) is applied to Lands' End in the instant case, the Equal Protection clauses of the federal and state constitutions would be violated. A recurring theme in Lands' End's discussion of equal protection (as elsewhere) is that it is being harmed because of the circuit court's error in denying Lands' End's motion for summary judgment (which resulted in Lands' End recovering a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect). We discussed our rejection of this theme in ¶| 62-64, above.
¶ 95. Our case law takes various approaches to analyzing equal protection challenges. We follow the approach taken by Lands' End.
¶ 96. Equal protection challenges can be addressed in three steps: (1) does the statute create a distinct class of persons, (2) does the statute treat that class of persons differently from all others similarly *536 situated; and (3) does a rational basis exist for the difference in treatment? See Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶ 23, 332 Wis. 2d 85, 796 N.W.2d 717 (citing Nankin v. Vill. of Shorewood, 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141).
¶ 97. Lands' End argues that 2011 Wis. Act 69 (enacting Wis. Stat. § 807.01(4) (2013-14)) creates two distinct classes — those who made an offer of settlement and recovered a judgment while Wis. Stat. § 807.01(4) (2009-10) was in effect, and those who made an offer of settlement prior to Act 69 but did not recover a judgment until after the enactment of Wis. Stat. § 807.01(4) (2013-14). Lands' End argues that these classes are treated differently — those in the first class are entitled to interest at a rate of 12 percent under Wis. Stat. § 807.01(4) (2009-10), while those in the second class are entitled to interest at " 1 percent plus the prime rate" under Wis. Stat. § 807.01(4) (2013-14).
¶ 98. In Lands' End's view, because this classification is "irrational or arbitrary," it violates the Equal Protection clauses of the federal and state constitutions. See Metro. Assocs., 332 Wis. 2d 85, ¶ 61 (quotation omitted).
¶ 99. Because Wis. Stat. § 807.01(4) does not implicate fundamental rights or suspect classifications, we apply the rational basis test in assessing Lands' End's equal protection challenge. See Ferdon ex rel. Petrucelli v. Wis. Patients Comp. Fund, 2005 WI 125, ¶¶ 64-66, 284 Wis. 2d 573, 701 N.W.2d 440.
¶ 100. In assessing the rationality of a legislative classification, Lands' End directs us to five criteria:
(1) All classification [s] must be based upon substantial distinctions which make one class really different from another;
*537 (2) The classification adopted must be germane to the purpose of the law;
(3) The classification must not be based on existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within the class];
(4) To whatever class a law may apply, it must apply equally to each member thereof;
(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.
Metro. Assocs., 332 Wis. 2d 85, ¶ 64 (citing Nankin, 245 Wis. 2d 86, ¶ 39).
¶ 101. Lands' End argues that if Wis. Stat. § 807.01(4) (2013-14) is applied to those who made offers of settlement while Wis. Stat. § 807.01(4) (2009-10) was in effect, the classification created by the amended version of the statute (2011 Wis. Act 69) fails the first, second, and fifth criteria. We disagree with Lands' End.
¶ 102. As to the first criterion, Lands' End argues that no real difference exists between the two classes of plaintiffs that Lands' End identified. The argument is that the only real difference between the two classes is that the recovery of judgment was delayed for plaintiffs like Lands' End (in Lands' End's case, because of an erroneous circuit court decision).
¶ 103. We conclude that the classes identified by Lands' End are substantially distinct from one another. As we explained previously, Lands' End and others who made offers of settlement under Wis. Stat. § 807.01(4) (2009-10) but did not recover a judgment *538 until after § 807.01(4) (2013-14) took effect did not acquire a vested right in the statutory interest rate in effect when they made their offers of settlement.
f 104. Conversely, parties who made offers of settlement and recovered judgments for as much or more than the offer prior to the effective date of Wis. Stat. § 807.01(4) (2013-14) do have vested rights in the 12 percent interest rate, as long as they have met all the requirements to recover interest under Wis. Stat. § 807.01(4) (2009-10). This is a substantial distinction.
¶ 105. As to the second criterion, Lands' End asserts again that denying 12 percent interest to plaintiffs like Lands' End, for whom recovery of judgment was delayed by a circuit court error, is not germane to the purpose of the statute.
¶ 106. In evaluating "whether a legislative classification rationally advances the legislative objective, 'we are obligated to locate or, in the alternative, construct a rationale that might have influenced the legislative determination.' " Ferdon, 284 Wis. 2d 573, ¶ 74 (quoting Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 57, 237 Wis. 2d 99, 613 N.W.2d 849).
f 107. Amending the statute governing interest rates applicable to offers of settlement to reduce the applicable rate of interest to near-market rates for those who recover a judgment after Wis. Stat. § 807.01(4) (2013-14) took effect fulfills various legislative objectives: (1) it ensures that prevailing parties will be compensated fairly and reasonably for being unable to use money to which they are entitled *539 during the pendency of the litigation;[39] and (2) it justly and practicably alleviates the unreasonable burden of imposing liability for interest far above market interest rates on the payor.
f 108. By tying the interest rate in Wis. Stat. § 807.01(4) (2013-14) to market rates, the legislature created a system that is fair to both parties under the circumstance of the instant case. Parties like Lands' End are still compensated at an above-market rate for being unable to use money to which they are "entitled" during the pendency of the litigation, while defendants like the City of Dodgeville still have an incentive to accept reasonable settlement offers.
f 109. Finally, addressing the fifth criterion, Lands' End does not find any distinctions between the classes created by 2011 Wis. Act 69, again arguing that the difference is that the circuit court erred initially and the court of appeals did not reverse the circuit court timely.
f 110. We conclude that, having regard to the public good, the legislature could reasonably conclude that treating parties with vested rights differently from parties who do not have vested rights is rational. Doing otherwise may raise due process questions. See Soc'y Ins., 326 Wis. 2d 444, ¶ 29.
¶ 111. Accordingly, we conclude that applying Wis. Stat. § 807.01(4) (2013-14) to those, like Lands' End, who made offers of settlement while Wis. Stat. § 807.01(4) (2009-10) was in effect but who did not recover a judgment until after Wis. Stat. § 807.01(4) (2013-14) took effect does not violate the Equal Protection clauses of the federal and state constitutions.
*540 * * *
¶ 112. For the reasons set forth, we affirm the circuit court's judgment and order awarding Lands' End interest at "1 percent plus the prime rate," the rate in the amended version of the statute, Wis. Stat. § 807.01(4) (2013-14), which was in effect when Lands' End recovered its judgment against the City of Dodge-ville.
¶ 113. Awarding interest at "1 percent plus the prime rate" in the instant case is not a retroactive application of Wis. Stat. § 807.01(4) (2013-14) and Lands' End did not have a vested right in the 12 percent interest rate in effect in Wis. Stat. § 807.01(4) (2009-10) at the time Lands' End made its offer of settlement. The circuit court's judgment and order do not violate the Due Process clauses of the federal and state constitutions or Wis. Stat. § 990.04. Moreover, because the legislature had a rational basis for changing the applicable interest rate from 12 percent to " 1 percent plus the prime rate" and did not create an irrational or arbitrary classification, awarding interest under Wis. Stat. § 807.01(4) (2013-14) does not violate the Equal Protection clauses of the federal and state constitutions.
¶ 114. Our decision in the instant case is contrary to the opinion of the court of appeals' in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515. In Johnson, the court of appeals held that applying the amended version of the rate of interest to offers of settlement made prior to the effective date of the amended version would disturb a vested right to interest. Johnson is an officially published opinion of the court of appeals. "Officially published opinions of the court of appeals shall have *541 statewide precedential effect." Wis. Stat. § 752.41(2) (2013-14). We overrule the Johnson decision.
f 115. Accordingly, we affirm the judgment and order of the circuit court in the instant case.
By the Court. — The order and judgment of the circuit court is affirmed.
¶ 116. REBECCA G. BRADLEY, J., did not participate.

 Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶ 30 (Wis. Ct. App. Sept. 12, 2013).

 The amended version of Wis. Stat. § 807.01(4) (2013-14) was adopted by 2011 Wis. Act 69. The phrase "party recovers a judgment" in Wis. Stat. § 807.01(4) is not defined. The meaning of the phrase is not pertinent to the issue before the court. Important for the instant case is that the parties do not dispute that Lands' End recovered a favorable judgment against the City only after the enactment of the amended version of Wis. Stat. § 807.01(4) (2013-14) lowered the statutory rate of interest recoverable when a party makes an offer of settlement and later recovers a judgment for greater than or equal to the amount of the offer.

 The prime rate is "the rate banks charge for short-term unsecured loans to creditworthy customers." Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978, 954 F.2d 1279, 1332 (7th Cir. 1992). Because the prime rate reflects market conditions, the prime rate provides a basis to assess the time value of money withheld from a litigant for the duration elapsed between the rejected offer of settlement and eventual payment. See generally Michael S. Knoll, A Primer on Prejudgment Interest, 75 Tex. L. Rev. 293 (1996).

 We sometimes refer to Wis. Stat. § 807.01(4) (2013-14) as the "amended version" of the statute, and refer to Wis. Stat. § 807.01(4) (2009-10) as the "prior version" of the statute or the statute in effect on the date of the offer of settlement.

 This court granted review in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, to address the same basic issues we address in the instant case. Before Johnson was fully briefed, the parties voluntarily dismissed the appeal with the permission of the court. See Wis. Stat. § (Rule) 809.18; see also Wis. S. Ct. Internal Operating Procedures ILL.4 (reprinted in Vol. 6, Wis. Stats.).

 Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶ 30 (Wis. Ct. App. Sept. 12, 2013).

 Johnson, 360 Wis. 2d 350, ¶ 5.

 Johnson, 360 Wis. 2d 350, ¶ 17.

 Johnson, 360 Wis. 2d 350, ¶ 10.

 Johnson, 360 Wis. 2d 350, ¶ 2.

 Johnson, 360 Wis. 2d 350, ¶ 11.

 Johnson, 360 Wis. 2d 350, ¶ 29.

 Johnson, 360 Wis. 2d 350, ¶ 29.

 See Johnson, 360 Wis. 2d 350, ¶¶ 25-29.
We note, however, that the court of appeals in Johnson misstated the balancing test, stating that " [i]f retroactive legislation causes 'substantial impairment of a vested right,' it is unconstitutional unless justified by a significant and legitimate public interest." See Johnson, 360 Wis. 2d 350, ¶ 15 (quoting Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶ 31, 244 Wis. 2d 720, 628 N.W.2d 842). In Society Insurance v. Labor & Industry Review Commission, 2010 WI 68, ¶ 30 n.12, 326 Wis. 2d 444, 786 N.W.2d 385, we held that "requiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroactive legislation must be 'justified by a rational legislative purpose.'"

 "If, however, a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application unless retroactive application would impair contracts or disturb vested rights." Betthauser v. Med. Protective Co., 172 Wis. 2d 141, 147, 493 N.W.2d 40 (1992) (citing Steffen *519 v. Little, 2 Wis. 2d 350, 357-58, 86 N.W.2d 622 (1957)). Because we conclude that awarding interest at the " 1 percent plus the prime rate" in effect when Lands' End recovered its judgment is not a retroactive application of Wis. Stat. § 807.01(4) and does not impair any vested rights, we need not decide whether Wis. Stat. § 807.01(4) is substantive or procedural. Even if interest under Wis. Stat. § 807.01(4) is, as Lands' End argues, substantive rather than procedural, the statute is not being applied retroactively and does not disturb vested rights.

 See also Republic Nat'l Bank v. United States, 506 U.S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment) ("[NJot every application of a new statute to a pending case will produce a 'retroactive effect.'"); Cox v. Hart, 260 U.S. 427, 435 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.") (citations omitted); 2 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 41:1, at 385 (7th ed. 2009) (" [A] statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date.")

 Cases in other jurisdictions agree that a party does not have a vested right when the existence of the right asserted is contingent on some uncertain future event. See, e.g., U.S. Cold Storage v. City of La Vista, 831 N.W.2d 23, 33 (Neb. 2013) ("To be considered a vested right, the right must be 'fixed, settled, absolute, and not contingent upon anything.'") (quoted source omitted) (emphasis added); Rehor v. Case W. Reserve Univ., 331 N.E.2d 416, 420 (Ohio 1975) (" '[A] vested right is a right fixed, settled, absolute, and not contingent upon anything.'") (emphasis added); Wylie v. Grand Rapids City Comm'n, 292 N.W. 668, 674 (Mich. 1940) (" 'A vested right... is a right so fixed, that it is not dependent on any act, contingency, or decision to make it more secure.") (emphasis added).

 In the Matter of the Estate of Winiarski v. Miicke, 186 Wis. 2d 409, 412, 521 N.W.2d 162 (Ct. App. 1994).

 See Winiarski, 186 Wis. 2d at 411.

 See Winiarski, 186 Wis. 2d at 411.

 Winiarski, 186 Wis. 2d at 411-12.

 Winiarski, 186 Wis. 2d at 412-13 (internal citations omitted) (emphasis in original).

 See Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994) ("As Justice Scalia has demonstrated, the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'") (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).
See also 2 Singer, supra note 16, § 41:6, at 457 ("Judicial attempts to explain whether [the] protection against retroactive interference [with vested rights] will be extended reveal that elementary considerations of fairness and justice govern.").

 See Landgraf, 511 U.S. at 265.

 See Landgraf, 511 U.S. at 265.

 See DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶ 33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶ 8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) (" [I]nterest may not be imposed unless an actual judgment is entered in a case."); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶ 10, 266 Wis. 2d 491, 668 N.W.2d 794 (interest awarded because judgment was recovered based on a stipulation).

 See Bd. of Governors of the Fed. Reserve Sys., Bank Prime Loan Rate Changes: Historical Dates of Changes and Rates (Dec. 21, 2014, 12:41 PM), https://research.stlouisfed.org/fred2/data/PRIME.txt (stating prime rates in 1980 fluctuated between 11 percent and 21 percent).

 See Michael S. Knoll, A Primer on Prejudgment Interest, 75 Tex. L. Rev. 293, 296 (1996) ("The payment of prejudgment interest. . . ensures that the plaintiff receives full compensation for its losses and that the defendant pays the full pe[n]alty, thereby putting both parties in the same position that they would have been in if the judgment had been paid immediately").

 See also infra, ¶¶ 106-108 (discussing the purposes of Wis. Stat. § 807.01(4) (2013-14)).

 A law is viewed as retroactive if it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past....'" State v. Chrysler Outboard Corp., 219 Wis. 2d 130, *527 172, 580 N.W.2d 203 (1998) (quoting In re Estate of Bilsie, 100 Wis. 2d 342, 357, 302 N.W.2d 508 (Ct. App. 1981)).
Lands' End does not argue that the application of the amended version of Wis. Stat. § 807.01(4) to Lands' End was retroactive because it "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."

 See DeWitt Ross & Stevens v. Galaxy Gaming & Racing Ltd. P'ship, 2004 WI 92, ¶ 33, 273 Wis. 2d 577, 682 N.W.2d 839 (citing Osman v. Phipps, 2002 WI App 170, ¶¶ 8, 12, 256 Wis. 2d 589, 649 N.W.2d 701) (" [Rnterest may not be imposed unless an actual judgment is entered in a case."); see also Tomsen v. Secura Ins., 2003 WI App 187, ¶ 10, 266 Wis. 2d 491, 668 N.W.2d 794 (interest awarded when judgment was recovered based on a stipulation).

 Trinity Petroleum, Inc. v. Scott Oil Co., Inc., 2007 WI 88, ¶ 48, 302 Wis. 2d 299, 735 N.W.2d 1.

 Trinity, 302 Wis. 2d 299, ¶ 48.

 Trinity, 302 Wis. 2d 299, ¶ 48 (emphasis added).

 Trinity, 302 Wis. 2d 299, ¶ 48.
Because the Trinity court concluded that the adoption of a new rule for sanctions and the repeal of Wis. Stat. § 814.025 were procedural rules generally applied retroactively, the Trinity court remanded the cause to the circuit court to determine whether applying the new rule governing frivolous actions that case commenced under the former rule governing frivolous actions " impose [d] an unreasonable burden on the party charged with complying with the new rule's requirements." Trinity, 302 Wis. 2d 299, ¶ 7.
Because we conclude that Wis. Stat. § 807.01(4) (2013-14) does not take away or impair vested rights and is not an undue burden in the instant case, no remand is needed to determine whether application of the amended version of the statute imposes an unreasonable burden.

 See Chrysler Outboard, 219 Wis. 2d at 172 (quoting Bilsie, 100 Wis. 2d at 357).

 Because awarding interest to Lands' End at the statutory rate in Wis. Stat. § 807.01(4) (2013-14) does not have a retroactive effect or impair vested rights, we need not address the rational basis test, see Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730 (1984); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976), or Lands' End's argument regarding the balancing of the public interest served by applying the amended law retroactively against the private interests that retroactive application would affect. See Matthies, 244 Wis. 2d 720, ¶ 27.

 See DOJ v. DWD, 2015 WI 114, ¶ 33, 365 Wis. 2d 694, 875 N.W.2d 545 (quoting State v. Gracia, 2013 WI 15, ¶ 28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87) (alteration omitted).

 See Upthegrove Hardware, Inc. v. Pa. Lumbermans Ins. Co., 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989).