¶ 80.
SHIRLEY S. ABRAHAMSON & ANN WALSH BRADLEY, JJ.
(concurring in part, dissenting in part). The petitioner, State of Wisconsin, seeks review of a court of appeals decision that affirmed the circuit court's determinations (1) that the defendant made a sufficient showing entitling him to an in camera review of the complainant's privileged mental health treatment records; and (2) that the exclusive remedy for refusal to disclose those records is witness preclusion.
¶ 81. We would affirm that part of the court of appeals' decision that concluded, adhering to State v. Shiffra, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and State v. Green, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298, that the defendant made a sufficient showing entitling him to an in camera review of the complainant's privileged mental health records.
*59 ¶ 82. However, we would reverse that part of the court of appeals' decision that concluded that exclusion of the complainant's testimony is the only available remedy when the complainant refuses to disclose the requested privileged mental health treatment records.
¶ 83. In discussing these issues, we focus on the "lead opinion" of Justice Michael J. Gableman (joined by two other justices) even though it does not represent the views of a majority of the justices. Indeed, Justice Gableman's opinion disagrees with the mandate (the result) stated in his opinion. The mandate affirms the court of appeals, and a majority of the court would affirm, at least in part, the decision of the court of appeals. Contrary to the mandate, Justice Gableman's analysis and conclusion would reverse the decision of the court of appeals.
¶ 84. The implications of mislabeling Justice Gableman's three-justice opinion as a "lead opinion" will be discussed further below.
¶ 85. For the reasons set forth, we concur in part, dissent in part, and write separately in an effort to explain what the court does (and does not do) in this case.
f — i
¶ 86. In this case we are asked to consider whether a defendant upon a sufficient showing can obtain disclosure of a witness's mental health records when it is necessary for his or her defense via a motion for in camera review. This is not a new question unaddressed by Wisconsin precedent.
¶ 87. In State v. Shiffra, 175 Wis. 2d 600, 605, 499 N.W.2d 719 (Ct. App. 1993), the court of appeals determined that a defendant is entitled to an in
*60 camera review of mental health treatment records once the defendant makes a preliminary showing that the sought-after evidence is material to his or her defense. This court adopted Shiffra, with some modification, in State v. Green, 2001 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298.[1]
¶ 88. Wisconsin courts have relied on Shiffra for decades. See, e.g., Johnson v. Rogers Mem'l Hosp., Inc., 2005 WI 114, ¶¶ 72-73, 283 Wis. 2d 384, 700 N.W.2d 27; State v. Allen, 2004 WI 106, ¶ 31, 274 Wis. 2d 568, 682 N.W.2d 433; State v. Solberg, 211 Wis. 2d 372, 386-87, 564 N.W.2d 775 (1997). Given that reliance, extra weight must be accorded to the principle of stare decisis (stand by things decided).
¶ 89. Yet, Justice Gableman's opinion would overrule this long-standing precedent.[2] The lengthy discussion of why Justice Gableman's opinion would overrule Shiffra relegates Wisconsin's jurisprudence on stare decisis to a footnote. This doctrine is a necessary part of any analysis that attempts to justify overruling a case that has been relied on for decades and cited approximately 90 times by state courts (including Wisconsin courts).
¶ 90. Further, the premise of Justice Gableman's opinion that there is no constitutional right to access information in criminal cases is a flawed overgeneral- *61 ization. Justice Gableman's op., ¶¶ 47, 55. It serves as a spring board enabling Justice Gableman's opinion to reach an erroneous conclusion that there is no constitutional basis for allowing a defendant access to a complainant's mental health records.
¶ 91. Finally, Justice Gableman's opinion ignores a canon of statutory construction, requiring statutes addressing the same subject to be interpreted such that both statutes are operative. Rather than reading the statutes to give legal effect to both, Justice Gableman's opinion's analysis considers only one statute, allowing it to reach its conclusion that the Shiffra/ Green procedure "cannot be grounded in any other legal basis." Justice Gableman's op., ¶ 8.
¶ 92. Contrary to Justice Gableman's opinion, neither we nor a majority of the court would discard our long-standing precedent so easily. The Shiffra / Green procedure is a reasonable answer to the difficult issue of how to balance multiple competing interests. Although we concur believing that Shiffra should be upheld, we yet again caution that Shiffra's remedies are not limited to witness preclusion. Accordingly, we respectfully dissent in part.
II.
¶ 93. Absent from Justice Gableman s opinion is an analysis of Wisconsin's jurisprudence on stare de-cisis. Instead, its discussion of stare decisis focuses on quotations from the United States Supreme Court. Justice Gableman's op., ¶ 39 n.18. However, this court has provided more detailed guidance on how stare decisis applies in our state. It has repeatedly explained that the principle requires "special justification" to overrule past decisions. See, e.g., State v. Luedtke, 2015 *62 WI 42, ¶ 40, 362 Wis. 2d 1, 863 N.W.2d 592; State v. Young, 2006 WI 98, ¶ 51, 294 Wis. 2d 1, 717 N.W.2d 729; Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶ 32, 293 Wis. 2d 38, 717 N.W.2d 216.
¶ 94. We have indicated that the reasons for departing from stare decisis typically include: "changes or developments in the law that undermine the rationale behind a decision"; "the need to make a decision correspond to newly ascertained facts"; "a showing that a decision has become detrimental to coherence and consistency in the law"; "a showing that a decision is unsound in principle"; and "a showing that a decision is unworkable in practice." Young, 294 Wis. 2d 1, ¶ 51 n.16 (citing Johnson Controls, Inc. v. Emp 'rs. Ins., 2003 WI 108, ¶¶ 98-99, 264 Wis. 2d 60, 665 N.W.2d 257).
¶ 95. The body of Justice Gableman's opinion does not point to any of these reasons for departing from stare decisis, rather it explains that it would overrule Shiffra because Shiffra relied on Pennsylvania v. Ritchie, 480 U.S. 39 (1987), a case involving distinguishable circumstances. Justice Gableman's opinion asserts that Ritchie is an "untenable foundation" for Shiffra's procedure and "never should have been stretched to cover privileged records held by agencies far removed from investigative and prosecu-torial functions." Justice Gableman's op., ¶¶ 36, 39. In a footnote, it adds that Shiffra is unsound in principle. Id., ¶ 39 n.19.
¶ 96. We cannot agree that the Shiffra court's decision to extend United States Supreme Court precedent to a somewhat analogous situation is "untenable" or "unsound." As detailed in Justice Ziegler's "dissent" and discussed in Justice Prosser's "dissent," Ritchie does not foreclose its application to a broader *63 set of circumstances. Justice Ziegler's "dissent," ¶¶ 28-33; Justice Prosser's "dissent," ¶¶ 7-8.
f 97. This point is underscored by the fact that Shiffra's approach was not unique. Several courts have extended Ritchie's holding to mental health records kept by private entities. See, e.g., State v. Kelly, 545 A.2d 1048, 1056 (Conn. 1988); Burns v. State, 968 A.2d 1012, 1024 (Del. 2009); People v. Bean, 560 N.E.2d 258, 273 (Ill. 1990); Commonwealth v. Barroso, 122 S.W.3d 554, 564 (Ky. 2003); Cox v. State, 849 So. 2d 1257, ¶ 53 (Miss. 2003); State v. Cressey, 628 A.2d 696, 703-04 (N.H. 1993); State v. Rehkop, 908 A.2d 488, 495-96 (Vt. 2006); Gale v. State, 792 P.2d 570, 581 (Wyo. 1990).
¶ 98. Given that Wisconsin courts have relied on Shiffra for decades, extra weight must be accorded to the principle of stare decisis. The factual distinctions between Ritchie and Shiffra fall short of its special justification requirement.
¶ 99. Perhaps Justice Gableman's opinion omits an analysis of Wisconsin's jurisprudence on stare de-cisis because it would inexorably lead to a different conclusion. In essence, Justice Gableman's opinion is anchored to the belief that Shiffra was wrongly decided.
¶ 100. Stare decisis has been heralded as a cornerstone of this state's jurisprudence since our earliest days of statehood. In 1859 the Wisconsin Supreme Court declared: "Stare decisis is the motto of courts of justice." Ableman v. Booth, 11 Wis. (*498) 517, (*522) 541 (1859).
¶ 101. The doctrine requires fidelity to the rule of law. Because Shiffra is well-established precedent, the question is not who has the better argument today but "whether today's ["lead opinion"] has come forward *64 with the type of extraordinary showing that this court has historically demanded before overruling one of its precedents." Payne v. Tennessee, 501 U.S. 808, 848 (1991) (Marshall, J., dissenting). The answer is clear: it has not.
¶ 102. Nothing of legal consequence has changed since Shiffra. The only change has been in the composition of the court.
( — { ► — I
¶ 103. Justice Gablemans opinion also errs by making overgeneralized statements about a defendant's right to access information in order to claim that there is no constitutional basis for allowing a defendant access to mental health treatment records. It broadly provides that there is no constitutional right to access information in criminal cases. Justice Gable-man's op., ¶¶ 47, 55. Further, it claims that "a defendant is entitled to access information only to the extent outlined in Wis. Stat. § 971.23, our criminal discovery statute." Justice Gableman's op., ¶ 47; see also Justice Gableman's op., ¶ 54 ("Discovery is purely statutory").
¶ 104. These statements overlook past precedent discussing criminal defendants' due process rights. In State v. Maday, the court held that "pretrial discovery is a fundamental due process right." Maday, 179 Wis. 2d 346, 354, 507 N.W.2d 365 (Ct. App. 1993). That case considered whether a defendant could require a victim to undergo a pretrial psychological evaluation when the state gives notice that it intends to introduce evidence generated by an exam of the victim by its own *65 experts.[3] The court answered this question in the affirmative. It explained that due process accords a defendant the opportunity to give relevant evidence at trial and a defendant could not do so without having the opportunity to first discover it.[4]
¶ 105. This court quoted Maday with approval in State v. Schaefer, 2008 WI 25, 308 Wis. 2d 279, 746 N.W.2d 457. Schaefer agreed that "[providing a defendant with meaningful pretrial discovery underwrites the interest of the state in guaranteeing that the quest for the truth will happen during a fair trial."[5]
¶ 106. Similar sentiments were expressed in State v. Migliorino, 170 Wis. 2d 576, N.W.2d 678 (Ct. App. 1992). In that case the defendant had been charged with trespass to a medical facility, which required a showing that the entry "tend[ed] to create or provoke a breach of the peace."[6] The defendant *66 sought the identities of the patients present when she entered the facility in order to dispute that element of the charge. Thus, the issue before the court was whether a defendant had the right to discover the identity of the patients.
¶ 107. The court observed that the compulsory process right is "in plain terms the right to present a. defense."[7] That right, in turn, "is fundamental to due process."[8] Accordingly, it explained that "[t]he concomitant issue of access to the identity of witnesses, as to whom the compulsory-process right would apply, is generally analyzed against the framework of 'fundamental fairness' guaranteed by due process."[9] Observing that "[i]t would be a bizarre rule indeed that gave defendants a compulsory-process right to call witnesses but which also withheld from them the ability to discover the identity of those witnesses," the Migliorino court determined that at the very least, the defendant was entitled to an in camera hearing to determine whether any of the patients present had knowledge of the "circumstances" of the defendant's entry.[10]
¶ 108. To be clear, this court has observed the "general rule" that there is no "broad right of discovery" in criminal cases. State v. Miller, 35 Wis. 2d 454, 474, 151 N.W.2d 157 (1967) (emphasis added). However, a general rule against broad discovery does not preclude the possibility of scenarios where defendants are entitled to information. As Maday and Migliorino demonstrate, due process can require limited access to *67 information in certain circumstances. Accordingly, Justice Gableman's opinion's premise that there is no constitutional right to access information in criminal cases, is a flawed overgeneralization. Justice Gable-man's op., ¶¶ 47, 55.
I — I <
¶ 109. In addition to making overgeneralizations which overlook Wisconsin precedent, Justice Gable-man's opinion's analysis ignores a canon of statutory construction. It is well-established that statutes addressing the same subject should be read in pari materia, such that both statutes are operative. Kolupar v. Wilde Pontiac Cadillac, Inc., 2007 WI 98, ¶ 28, 303 Wis. 2d 258, 735 N.W.2d 93.
¶ 110. Yet, although Justice Gableman's opinion recognizes that there are two related statutes at issue in this case — Wis. Stat. § 146.82, which makes patient health care records confidential, and Wis. Stat. § 905.04, which accords a patient the privilege of refusing to disclose such confidential information — its analysis considers only the statute creating the privilege. Justice Gableman's op., ¶¶ 19, 56-63.
¶ 111. Our precedent is clear that these two statutes must be interpreted together. We have explained that the principle of in pari materia applies because together the statutes "represent a collective statement as to the reach and limits of the confidentiality and privilege which attach to [health care] records or communications." State v. Denis L.R., 2005 WI 110, ¶ 57 n.21, 283 Wis. 2d 358, 699 N.W.2d 154 (quoting State v. Allen, 200 Wis. 2d 301, 309, 546 N.W.2d 517 (Ct. App. 1996)); see also Johnson v. Rogers Mem'l Hosp., 283 Wis. 2d 384, ¶ 36; Justice Prosser's "dissent," ¶ 12.
*68 ¶ 112. Although Wis. Stat. § 905.04 does not include an exception to the privilege permitting access to mental health records when they are necessary for a defense, such an exception can be found in the confidentiality statute. Wisconsin Stat. § 146.82(2)(a)4. provides that patient health care records shall be released "[u]nder a lawful order of a court of record." Nowhere does Justice Gableman's opinion discuss this language or how it should be interpreted alongside the privilege statute so that it still has meaning. Without such an analysis, Justice Gableman's opinion is incomplete.
V
¶ 113. Contrary to Justice Gableman's opinion, we would not overrule Shiffra. There are strong interests implicated when a defendant seeks a witness's mental health treatment records. For defendants, it is the interest in being able to present a complete defense. See Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'")); State v. Behnke, 203 Wis. 2d 43, 56, 553 N.W.2d 265 (Ct. App. 1996) ("[T]he Due Process Clause guarantees the defendant a right to a trial based on truth seeking which can only be accomplished by allowing him or her to present a complete defense.").
¶ 114. At the same time, patients have an interest in keeping their mental health treatment records private. Due to the sensitive nature of the problems for which patients seek mental health treatment, "disclo-
*69 sure of confidential communications made during counseling session may cause embarrassment or disgrace." Jaffee v. Redmond, 518 U.S. 1, 10 (1996). Accordingly, the physician-patient privilege in Wis. Stat. § 905.04 was created "to encourage patients to freely and candidly discuss medical concerns with their physicians by ensuring that those concerns will not unnecessarily be disclosed to a third person." Steinberg v. Jensen, 194 Wis. 2d 439, 459, 534 N.W.2d 361 (1995).
¶ 115. The Shiffra procedure takes both of these interests into account and prescribes a reasonable balance. Solberg, 211 Wis. 2d at 387 ("Such a procedure strikes an appropriate balance between the defendant's due process right to be given a meaningful opportunity to present a complete defense and the policy interests underlying the Wis. Stat. § 904.05(2) privilege.").
¶ 116. It is consistent with the approach taken by a majority of state courts.[11] They "have held that a criminal defendant, upon a preliminary showing that *70 the records likely contain exculpatory evidence, is entitled to some form of pretrial discovery of a prosecution witness's mental health treatment records that would otherwise be subject to an 'absolute' privilege." Barroso, 122 S.W.3d at 561. In camera judicial review of a victim's privileged records "currently represents the most common method of balancing statutory privileges against the defendant's trial rights." State v. Pratt, 669 A.2d 562, 571 (Conn. 1995). We see no reason to depart from our precedent and end this practice in Wisconsin.
¶ 117. Because we would not overrule the Shiffra / Green procedure, we turn to the question left unaddressed by Justice Gableman's opinion: Is witness preclusion the only remedy available to the circuit court when a complainant refuses to waive the physician-patient privilege?
¶ 118. We have addressed this issue before. When this court granted the motion for reconsideration in State v. Johnson, we wrote separately to explain that witness preclusion was not the only remedy intended by the Shiffra court. 2014 WI 16, ¶ 19, 353 Wis. 2d 119, 846 N.W.2d 1 (Ann Walsh Bradley, J., concurring in part, dissenting in part, joined by Abrahamson, C.J.) ("The court in Shiffra expressly contemplated that a variety of sanctions may be appropriate depending on the circumstances.").
¶ 119. In Shiffra, the court determined that it was not a misuse of the circuit court's discretion to suppress the victim's testimony as a sanction for her refusal to release the records. 175 Wis. 2d at 612. Nowhere did it limit the remedies available to witness *71 preclusion. Rather, its language made clear that it was discussing the facts of the case before it:
The only issue remaining is whether the trial court misused its discretion when it suppressed Pamela's testimony as a sanction for her refusal to release the records. In this situation, no other sanction would be appropriate. The court did not have the authority to hold Pamela in contempt because she is not obligated to disclose her psychiatric records. An adjournment in this case would be of no benefit because the sought-after evidence would still be unavailable. Under the circumstances, the only method of protecting Shiffra's right to a fair trial was to suppress Pamela's testimony if she refused to disclose her records.'
Id. (emphasis added).
¶ 120. The author of Shiffra later clarified that the case did not require suppression. State v. Johnson, No. 2011AP2864-CRAC, unpublished slip op., ¶¶ 23-28 (Wis. Ct. App. Apr. 18, 2012) (Brown, C.J., dissenting). He proposed an alternative remedy, whereby "if an alleged victim refuses to release medical or counseling records to the court for in camera inspection, the court may compel release anyway, pursuant to Wis. Stat. § 146.82(2)(a)4." Id., ¶ 24. Acknowledging that Wis. Stat. § 146.82 generally will not trump the physician-patient privilege, he explained that where the privilege is trumped by constitutional concerns, a court may utilize Wis. Stat. § 146.82(2)(a)4. in order to conduct an in camera review. Id., ¶ 25.
¶ 121. We would adopt this approach. It harmonizes the two statutes addressing mental health treatment records and accounts for defendants' right to present a complete defense. Further, it alleviates the state's concern that the Shiffra procedure allows wit *72 nesses to thwart prosecution. By giving the court the power to review some mental health treatment records in camera when a defendant has established a constitutional right to that review, Judge Brown's remedy leaves the balancing of the competing interests in the hands of the court.
¶ 122. As Judge Brown observed, "[t]he courts are especially equipped for this task. Indeed, it is what judges do." Johnson, No. 2011AP2864-CRAC, ¶ 27. We agree.
VI
¶ 123. In closing, we turn to the implications of mislabeling Justice Gableman's three-justice opinion as a "lead opinion." Rather than sow the seeds of confusion by issuing our opinions seriatim with Justice Gableman's opinion occupying the "lead" role, we should hew to our two-year-old precedent in Johnson, 353 Wis. 2d 119, ¶ 1 (on reconsideration). In Johnson, we addressed almost identical factual and legal issues, and issued a per curiam opinion stating that because the court was deadlocked, "the court of appeals decision must be affirmed."[12]
¶ 124. Reading Justice Gableman's writing, designated as the "lead" opinion, and reading Justice Prosser's and Justice Ziegler's writings, self-designated (and so dubbed by Justice Gableman) as "dissenting" opinions makes us feel like we've stepped into "the Twilight Zone."[13] As Justices Prosser and Ziegler explain, they are dissenting because they disagree with Justice Gableman's writing; they are not *73 dissenting from the court's bottom line, which affirms the decision of the court of appeals.
¶ 125. All appearances to the contrary, the mandate (the result) in this case is "the decision of the court of appeals is affirmed." Justice Gableman's opinion, referred to as the "lead opinion," disagrees with this result and is in reality a dissent.[14]
| 126. Three separate writings (Justice Ziegler's, Justice Prosser's, and ours) concur (at least in part) in the result and with the decision of the court of appeals. But for some unstated reason, both Justice Prosser's and Justice Ziegler's writings are labeled (and referred to in the "lead opinion") as "dissents."[15]
¶ 127. By failing to acknowledge the real positions of the justices, we are, in the words of Rod Serling, the creator of The Twilight Zone, "traveling through another dimension . . . into a. . . land whose [only] boundaries are that of imagination."
¶ 128. In this zone of the court's imagination, Justice Gableman's opinion (which represents the views of two other justices, Patience Drake Roggen-sack and Rebecca G. Bradley) is the "lead opinion," even though these three justices disagree with the mandate, which leaves "the law... as the court of appeals has articulated it" intact.
¶ 129. The court of appeals in this case followed Shiffra and Green.[16] Justice Gableman's "lead opinion," however, would overturn Shiffra and Green.
¶ 130. Normally, we have a word for opinions that do not garner the votes of a majority of the *74 participating justices and disagree with the mandate of the court: We call them "dissents." For some unstated reason, Justice Gableman does not label his writing either a dissent or a concurrence, thus masking its true nature.
¶ 131. Likewise, in the court's imaginative zone, the opinions of Justices Prosser and Ziegler are "dissents." Yet they agree with the outcome of this case and would affirm the decision of the court of appeals, which followed Shiffra and Green. We would also affirm the part of the decision of the court of appeals that followed Shiffra and Green as well, although we would reverse the part of the decision of the court of appeals that held that witness preclusion is the sole remedy available under Shiffra and Green.[17]
¶ 132. Outside this imaginative zone, we have a word for opinions that do not garner the votes of a majority but agree with the mandate of the court: We call them "concurrences."
¶ 133. For some unstated reason, this label is not applied to Justice Prosser's and Justice Ziegler's writings.
¶ 134. As Justice Ziegler writes, acknowledging the absurdity of labelling her writing as a "dissent" when she agrees with the result of this case: "Hence, although I write in dissent, I dissent from the lead opinion; I agree with the functional outcome of this case."[18]
¶ 135. The "functional outcome of this case" is that we affirm the court of appeals. In fact, that is the outcome our precedent requires when, as happened just two years ago in an almost identical factual *75 situation raising the same legal issues, the court deadlocked: "the court of appeals decision must be affirmed." See Johnson, 353 Wis. 2d 119, ¶ 1.
¶ 136. In Johnson, the court (sitting with just five members) initially issued a per curiam opinion holding that, under varying rationales, (1) a circuit court may not require a victim to produce privately held, privileged mental health records for in camera review; and (2) the victim may testify even if he or she does not produce privately held, privileged mental health records for in camera review. State v. Johnson, 2013 WI 59, ¶¶ 5-7, 348 Wis. 2d 450, 832 N.W.2d 609.
¶ 137. Subsequently, however, as we stated previously, the court granted reconsideration and modified the prior per curiam, asserting that "[v]ery simply stated, the court of appeals is affirmed because no three justices!, a majority on a five-member court,] conclude either (1) that under Shiffra, the victim must produce the records if she is to testify, or (2) that under Green, the victim need not produce the records in order to testify." Johnson, 353 Wis. 2d 119, ¶ 3 (on reconsideration). "As a result, since a majority of the court has not reached consensus under precedent so as to decide the issue presented and the court is deadlocked, the decision of the court of appeals must be affirmed." Johnson, 353 Wis. 2d 119, ¶ 13 (on reconsideration).
¶ 138. This case raises the same issues as Johnson, only this time with a seven-member court. Following Johnson as precedent, we should issue a per curiam opinion affirming the court of appeals. Any justice could, if the justice wished, write separately. The justices' separate writings would appear as concurrences or dissents in order of seniority, as is our usual practice.
*76 ¶ 139. But rather than hew to our precedent in Johnson, the court sows the seeds of confusion and issues our opinions seriatim with Justice Gableman's opinion (a dissenting opinion issued without any label) being called the "lead opinion."
¶ 140. The proliferation of separate writings (as in this case) and "lead opinions" is emblematic of the court's work this "term" (September 2015 to June 2016).
¶ 141. Although we have not done a statistical analysis, our perception is that few of the court's decisions this term have been unanimous without any separate writings,[19] and several, including this case, have begun with "lead opinions." See, e.g., Singh v. Kemper, 2016 WI 67, 371 Wis. 2d 127, 883 N.W.2d 86 (lead op. of Ann Walsh Bradley, J., joined by Abrahamson, J.); Lands' End, Inc. v. City of Dodgeville, 2016 WI 64, 370 Wis. 2d 500, 881 N.W.2d 702 (lead op. of Abrahamson, J., joined by Arm Walsh Bradley, J., and Gableman, J.); Coyne v. Walker, 2016 WI 38, 368 Wis. 2d 444, 879 N.W.2d 520 (lead op. of Gableman, J. with Abrahamson, J., Ann Walsh Bradley, J., and Prosser, J., each concurring separately); State v. Smith, 2016 WI 23, 367 Wis. 2d 483, 878 N.W.2d 135 (lead op. of Roggensack, C.J., joined by Prosser, J., and Gableman, J.); United Food & Comm. Workers Union, Local 1473 v. Hormel Foods Corp., 2016 WI 13, 367 Wis. 2d 131, 876 N.W.2d 99 (lead op. of Abrahamson, J., joined by Ann Walsh Bradley, J.); Hoffer Props., LLC v. DOT, 2016 WI 5, 366 Wis. 2d 372, 874 N.W.2d 533 (lead op. of Gableman, J., joined by Roggensack, C.J., and Ziegler, J.).
*77 ¶ 142. The phrase "lead opinion" is not, as far as we are aware, defined in our Internal Operating Procedures or elsewhere in the case law. Our Internal Operating Procedures (IOPs) refer to "lead opinions," but only in stating that if, during the process of circulating and revising opinions, "the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion.' " Wis. S. Ct. IOP II.G.4.[20]
¶ 143. Prior to this case, we would have said that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices. So, for example, in a case with six justices participating, if three justices join one opinion affirming the decision of the court of appeals, two justices join a different opinion affirming the decision of the court of appeals, and one justice dissents, there is a single mandate — the decision of the court of appeals is affirmed — but no majority opinion. See Hoffer, 366 Wis. 2d 372. Rather, one of the opinions affirming the decision of the court of appeals will be the lead opinion.
¶ 144. This case, however, unnecessarily complicates our understanding of what is a "lead opinion." Now, an opinion that disagrees with the mandate and argues for an outcome with which a majority of the court disagrees can be designated a "lead opinion."
¶ 145. The absence of an agreed-upon definition for "lead opinion" has the potential to cause confusion among the bench, the bar, and the public. Also, the precedential effect (or lack thereof) of a "lead opinion" *78 is uncertain. Are lead opinions in this court comparable to plurality opinions in the United States Supreme Court?[21] Apparently, the court of appeals considers a plurality decision of this court persuasive but does not always consider it binding. See, e.g., State v. King, 205 Wis. 2d 81, 88-89, 555 N.W.2d 189 (Ct. App. 1996) (citing State v. Dowe, 120 Wis. 2d 192, 194, 352 N.W.2d 660 (1984)).
¶ 146. We would avoid the unnecessary confusion caused by Justice Gableman's dissenting "lead" opinion, and issue a simple per curiam opinion stating, as we did in Johnson, that "the court of appeals decision must be affirmed."[22] Each justice could attach his or her separate writing to this per curiam explaining how she or he would decide the case. This procedure would avoid the confusion inherent in conferring, for some unstated reason, "lead opinion" status on Justice Gableman's dissenting opinion.
¶ 147. In closing, we note another way in which this case is emblematic of the court's work during this term.
*79 ¶ 148. Despite one of the lightest (if not the lightest) case loads ever in modern times and the adoption (by a divided court) of a new procedure for circulating and mandating opinions on September 25, 2014 (ostensibly designed to avoid the June "crush"), around 40 percent of our decisions (including the case before us) will be completed and released in June and July.[23] This is true even though the court no longer discusses draft opinions in Conference unless a majority of justices vote to do so.[24]
¶ 149. In sum, failing to issue a per curiam opinion here raises the potential for significant confusion over the outcome of this case, the implication of our decision for future cases, and the definition of "lead opinion," a term that has seen increasing use of late. These issues should be approached by the court and the justices in a descriptive, analytical, and historical manner, free from divisiveness or offensive posturing, personal attacks, and false accusations.
¶ 150. Engaging in or responding to such personal attacks and accusations neither sheds light on the inquiry before us nor promotes public trust and confidence in the court.
*80 ¶ 151. For the reasons set forth, we concur in part, dissent in part, and write separately to address institutional concerns.

 Green clarified that for an in camera review the defendant must make a preliminary showing that there is "a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative to other evidence available to the defendant." State v. Green, 2002 WI 68, ¶ 34, 253 Wis. 2d 356, 646 N.W.2d 298.

 Only three justices voted to overrule the Shiffra / Green procedure. Because we are unable to reach a consensus, the decision of the court of appeals stands.

 State v. Maday, 179 Wis. 2d 346, 349, 507 N.W.2d 365 (Ct. App. 1993).

 Maday, 179 Wis. 2d at 357.

 State v. Schaefer, 2008 WI 25,¶ 23, 308 Wis. 2d 279, 746 N.W.2d 457 (quoting Maday, 179 Wis. 2d at 354-55) (emphasis omitted).
Curiously, Justice Gableman's opinion cites Schaefer as a basis for its statement that "a defendant is entitled to access information only to the extent outlined in Wis. Stat. § 971.23." Justice Gableman's op., ¶ 47. However, the comments in Schaefer referenced by Justice Gableman's opinion were made in the context of discussing whether there is a right to discovery prior to a preliminary examination. Because the constitutional right to compulsory process applies to trials and not preliminary examinations, it determined that Wis. Stat. § 971.23(1) (requiring the prosecution to provide discovery materials within a reasonable time before trial) and Wis. Stat. § 971.31(5)(b) (barring discovery motions at preliminary examinations and prior to the filing of an information) governed.

 Migliorino, 170 Wis. 2d at 592.

 Migliorino, 170 Wis. 2d at 586 (quoting Washington v. Texas, 388 U.S. 14, 19 (1967)).

 Migliorino, 170 Wis. 2d at 586.

 Migliorino, 170 Wis. 2d at 586.

 Migliorino, 170 Wis. 2d at 586, 595.

 See e.g., D.P. v. State, 850 So. 2d 370, 373 (Ala. Crim. App. 2002); State v. Slimskey, 779 A.2d 723, 732 (Conn. 2001); Burns v. State, 968 A.2d 1012, 1024 (Del. 2009); Lucas v. State, 555 S.E.2d 440, 446 (Ga. 2001); People v. Bean, 560 N.E.2d 258, 273 (Ill. 1990); State v. Thompson, 836 N.W.2d 470, 486 (Iowa 2013); Commonwealth v. Barroso, 122 S.W.3d 554, 564 (Ky. 2003); State v. Johnson, 102 A.3d 295, 297 (Md. 2014); State v. Hummel, 483 N.W.2d 68, 72 (Minn. 1992); Cox v. State, 849 So. 2d 1257, 1272 (Miss. 2003); State v. Duffy, 6 P.3d 453, 458 (Mont. 2000); State v. Gagne, 612 A.2d 899, 901 (N.H. 1992); Kinsella v. Kinsella, 696 A.2d 556, 570 (N.J. 1997); State v. Gonzales, 912 P.2d 297, 302 (N.M. Ct. App. 1996); People v. Viera, 133 A.D.3d 622, 623 (N.Y. App. Div. 2015); State v. Burnham, 58 A.3d 889, 898 (R.I. 2013); State v. Middlebrooks, 840 S.W.2d 317, 333 (Tenn. 1992), superseded on other grounds by Tenn. Code Ann. § 39-13-392; State v. Cramer, 44 P3d 690, *70 695-96 (Utah 2002); State v. Barbera, 872 A.2d 309, 313 (Vt. 2005); Gale v. State, 792 P.2d 570, 581 (Wyo. 1990).

 State v. Johnson, 2014 WI 16, f 1, 353 Wis. 2d 119, 846 N.W.2d 1 (on reconsideration).

 CBS, The Twilight Zone (1959).

 Compare Justice Gableman's opinion, n.l.

 See Justice Gableman's opinion, ¶¶ 16 n.15, 39 n.17 & 18, 72 n.31.

 See State v. Lynch, 2015 WI App 2, ¶¶ 8, 44-45, 359 Wis. 2d 482, 859 N.W.2d 125.

 See supra ¶ 42.

 Justice Ziegler's "dissent," ¶ 47 n.14.

 See, e.g., State v. Tourville, 2016 WI 17, 367 Wis. 2d 285, 876 N.W.2d 735 (unanimously affirming the court of appeals).

 Our internal operating procedures are contained in volume 6 of the Wisconsin Statutes.

 See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....'") (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).
For discussions by this court of the precedential effect of plurality opinions in the United States Supreme Court, see, for example, State v. Griep, 2015 WI 40, ¶ 36, 361 Wis. 2d 657, 863 N.W.2d 567; State v. Deadwiller, 2013 WI 75, ¶ 30, 350 Wis. 2d 138, 834 N.W.2d 362.

 Johnson, 353 Wis. 2d 119, ¶ 1.

 All of the justices' work on opinions is completed on or before June 30. Because the number of mandates is limited each week, several opinions finished by June 30 are released in July.

 The court's procedures for circulating and mandating opinions have been written about before. See, e.g., State v. Gonzalez, 2014 WI 124, ¶¶ 25-40, 359 Wis. 2d 1, 856 N.W.2d 580 (Abrahamson, C.J., concurring) (setting forth the procedure in full). Others have noted the light case load this term. See Alan Ball, Justice Abrahamson's Concerns Over the Docket - An Update, SCOWstats (Mar. 20, 2016), http://www.scowstats.com/ 2016/03/20/justice-abrahamsons-concems-over-the-docket-an-update/.